**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willie Joseph CAUSEY, Jr.,
Defendant-Appellant.**

No. 86-1992.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 8, 1987.

Decided Dec. 8, 1987.

Rehearing and Rehearing En Banc
Denied Jan. 25, 1988.

Martin Geer (argued), Ann Arbor, Mich., for defendant-appellant.

Michael J. Lavoie, Asst. U.S. Atty., Detroit, Mich., Phyllis M. Golden, Jane Shallal (argued), for plaintiff-appellee.

Before KEITH and MILBURN, Circuit Judges, and EDWARDS, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Willie Joseph Causey, Jr., appeals his conviction for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d)(2). The principal arguments on appeal are: (1) whether the government's violation of Rule 12.1 of the Federal Rules of Criminal Procedure mandates a new trial, (2) whether the prosecution was permitted to conduct improper impeachment and vouching of its witnesses without limiting instructions, (3) whether the prosecutorial misconduct throughout the trial denied Causey a fair trial, (4) whether the pretrial and in-court identifications should have been excluded, and (5) whether Causey was denied a fair trial because of his joinder with other codefendants. For the reasons that follow, we affirm.

## I.

On March 21, 1986, at 10:30 a.m., four men robbed the Michigan National Bank of Macomb, in Warren, Michigan. One of the men, Kevin Crumbie, entered the area behind the teller cage while a second man, Aundray Bradley, jumped onto teller counter number two. Several witnesses identified a third man, who stood against the west wall underneath a clock, as defendant Causey. The man identified as Causey was wearing a Detroit Tigers baseball cap and was observed pointing a sawed-off shotgun at those inside the bank. The fourth man, whose identity is unknown, stood in the doorway as a lookout. None of the men's faces were concealed in any manner.

After the robbery, the four men exited the bank through the same door from which they entered, taking with them over $20,000.00 in cash. They sped away in a brown compact car, driving south toward Detroit. Several bank customers followed the car and obtained the license plate number. While following the brown car, they observed red powder filling the inside of the car and blowing out of the windows, as a red dye pack in the money they had stolen exploded. At that point, apparently stunned by the explosion, the robbers inside the car began to throw stolen money out of the car's windows and onto the street.

On April 17, 1986, the defendant and the two others who were identified were indicted by a federal grand jury for the bank robbery. A jury trial commenced on June 11, 1986. Several different witnesses were able to provide eyewitness identification of Causey as the man under the clock wearing the Tigers baseball cap.

Kathleen Firestone, the bank's customer service representative, testified that she could identify the person standing under the clock. Although unable to identify anyone in a photo array, she was able to positively identify Causey among the three defendants sitting in the courtroom as the man who stood underneath the clock.

Tamara Furnari, who was working the drive-in window on the morning of the robbery, selected Causey out of a photographic array, indicating that he strongly resembled the man standing underneath the clock. She was also able to make a positive in-court identification by pointing out Causey among the three men in the courtroom as the robber underneath the clock.

Two other tellers were able to identify Causey out of a photo array, as well as in court, as the man standing underneath the clock. Another teller testified that she was able to get a good look at the face of the man standing underneath the clock holding a shotgun, as he stood directly in front of her, and she pointed Causey out in the courtroom as the man under the clock.

A police investigation revealed that the license plate number taken from the brown compact car was registered to Joseph Anderson of Detroit for a 1979 Plymouth automobile. However, FBI agents were unsuccessful in locating the car. After

talking to Anderson, the FBI agents found the car disabled and absent any license plate. Anderson, who had known Causey for almost twenty years, indicated that Causey had come to his house the evening before the robbery looking for codefendant Bradley, who was living with Anderson at the time.

Defendants Crumbie and Bradley were seen together by a number of people, both on the day of the robbery and several days afterward, driving a brown-colored car and in possession of large sums of money. The day after the robbery, Causey was observed by Martin Hall sitting inside a parked car and later driving away with defendant Crumbie.

On March 23, 1986, Detroit police arrested defendant Bradley and recovered a brown paper bag containing a revolver and Bradley's identification. A telephone number assigned to Anita Jones was written on the exterior of this brown paper bag. Jones, who knew Bradley, indicated that she had not heard from nor seen him in over three years. However, proof was introduced that Causey used Jones' telephone number as a location where he could have telephone messages taken.

In his defense, Causey relied primarily upon the alibi testimony of Aubrey Jackson, who testified that Causey was with him at the time of the robbery. However, on the day before Jackson was to testify, his wife, Maxine Jackson, allegedly called the FBI and requested that they remind her husband of the penalties for perjury. She further stated that her husband had told her that he had been informed by Causey of the bank robbery, and that Causey had given her husband $50.00 for repayment of a debt, plus an additional $100.00 allegedly taken in the robbery.

Mrs. Jackson allegedly further stated that she and other family members had attempted to talk to her husband concerning his testimony, and that she was not certain of what her husband intended to say when he was called to testify on Causey's behalf. When asked whether or not she would be willing to testify, Mrs. Jackson responded that she was fearful that the fourth robber, whom she also knew, might harm either her or her child, as he had previously threatened her son. She further indicated that family members were still talking to her husband and that her testimony might not be needed.

After her husband's testimony on July 23, 1986, that Causey was with him at the time of the robbery, the prosecution sought to obtain Mrs. Jackson's testimony. When the prosecutor attempted to subpoena her, Mrs. Jackson would neither answer the door nor acknowledge the presence of the officers. The next day, July 24, 1986, Causey's counsel was notified about Mrs. Jackson. The district court then issued a bench warrant and had her brought before the court. Causey's attorney did not object to lack of notice nor request a continuance.

When called as a witness, Mrs. Jackson claimed that she did not remember any conversation with the FBI nor any conversation concerning what her husband told her. After her testimony, the government called FBI Agent James Harrington, the agent who took Mrs. Jackson's telephone call, and he testified as to what Mrs. Jackson had told him over the telephone.

We also note from the record that during the course of the trial, alleged threats were made against many of the government's witnesses. It was unclear whether the alleged threats were being made by the unknown bank robber or by the defendants. As a result of the alleged threats, however, the district judge had Causey's telephone privileges revoked.

After several days of testimony, the jury convicted all three defendants. In this appeal, defendant Causey presents numerous issues for our review. As earlier indicated, we find all of them to be without merit.

## II.

### A. Noncompliance with Rule 12.1

Causey claims that the trial court erred in allowing testimony of a government alibi rebuttal witness when Rule 12.1 of the Federal Rules of Criminal Procedure was technically violated. Rule 12.1 provides in relevant part:

(a) NOTICE BY THE DEFENDANT. Upon written demand of the attorney for the government stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of the defendant's intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

"[O]nce the government has requested notice of a defendant's alibi defense, both the defendant and the government are under a duty to disclose the names and addresses of its witnesses on the alibi issue." *United States v. Wood,* 780 F.2d 555, 560 (6th Cir.) (per curiam), *cert. denied,* 475 U.S. 1111, 106 S.Ct. 1522, 89 L.Ed.2d 920 (1986). Further, "[b]oth parties are also under a continuing duty 'promptly' to disclose any such information discovered prior to or during trial." *Wood,* 780 F.2d at 560; Fed.R. Crim.P. 12.1(c).

The sanction for failing to comply is provided in Rule 12(d), which provides in relevant part:

(d) FAILURE TO COMPLY. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense.

However, the rule provides that "[f]or good cause shown, the court may grant an exception to any of the requirements of subdivisions (a) through (d) of this rule." Fed. R.Crim.P. 12(e).

■ In the present case, there is no dispute that the government did not technically comply with Rule 12.1. However, Causey *did not object* to the use of the testimony at the time it was given.[1] In the absence of a timely and proper objection, Causey's claim will be reviewed only to the extent that it constitutes plain error under Fed.R.Crim.P. 52(b). *United States v. Ortega–Chavez,* 682 F.2d 1086 (5th Cir. 1982). In *Wood,* after noting that a contemporaneous objection is generally required, this court held that "[b]ecause of the explicit nature of the government's obligation under Fed.R.Crim.P. 12.1, and because the Supreme Court has ruled that reciprocal disclosure by the government may at least to some extent be constitutionally required in a notice-of-alibi rule, we discussed the merits of defendant's claim." *Wood,* 780 F.2d at 560 n. 5. (citation omitted). However, implicit in our use of the abuse of discretion standard in *Wood* is a recognition that the trial judge in that case was on notice of an objection to the use of alibi rebuttal testimony. This is the only way an abuse of discretion standard of review could be properly used. From the record in the present case, there was no objection of any sort, and, therefore, the trial judge was unaware of any objection to the evidence at the time it was admitted. In the absence of any objection of any kind, we are not willing to find that the trial court should have *sua sponte* excluded the evidence absent any indication that failure to do so constituted plain error.

■ Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial. *United States v. Perez,* 651 F.2d 268 (5th Cir.1981); *see also United States v. Mendez–Ortiz,* 810 F.2d 76 (6th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987). We do not find plain error.

■ Assuming, *arguendo,* that we were to apply the abuse of discretion standard of review employed by this court in *Wood,* we

---

1. Causey's counsel claims that objection was made off the record in chambers. However, the district judge in ruling on Causey's motion for a new trial stated that he recalled no objection being made in chambers as claimed. J.A. at 335. Thus, our review is limited to the record which is devoid of objection. If Causey did object in chambers, his failure to have that objection noted in the record limits our review to whether or not plain error was committed.

find adequate support in the record for the trial court's determination, in ruling upon defendant Causey's motion for a new trial, that under the totality of the circumstances the government had good cause for noncompliance with Rule 12.1, and, therefore, the government's noncompliance would be excused pursuant to the *exception* contained in Rule 12.1(e).[2] Initially, we note that Rule 12.1(d) provides that the trial court *may* exclude testimony if there is a failure to comply with the rule. Thus, exclusion "is neither mandatory nor absolute under the rule in every instance." *United States v. Carter,* 756 F.2d 310, 311 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3307, 92 L.Ed.2d 721 (1986).

■ In the present case, notice was provided within forty-eight hours of the time the government became aware of Mrs. Jackson's potential testimony, and within twenty-four hours of the government's decision to call her. Further, the record indicates that threats were being made to witnesses in an effort to preclude their testimony. In such a situation, the physical safety and protection of potential witnesses constitutes a proper consideration of a trial court in determining whether good cause exists to justify nondisclosure of witnesses to opposing counsel and thus noncompliance with Rule 12.1. *See United States ex rel. Veal v. DeRobertis,* 693 F.2d 642 (7th Cir.1982).

While it is possible that Causey *may* have been prejudiced by the government's noncompliance with Rule 12.1, the failure of Causey's counsel to contemporaneously object to the admission of the testimony, his failure to request a continuance, his failure to *voir dire* the witness prior to her testimony, and the fact that no motion to strike the testimony was made militates against any presumption of prejudice. At the hearing on defendant Causey's motion

for a new trial, the trial judge, after considering all the circumstances, found that the government first became aware of Mrs. Jackson's potential as an alibi rebuttal witness on July 22, 1986, the day before her husband was to testify. The next day, the 23rd, the government decided to call Mrs. Jackson as a witness and unsuccessfully attempted to subpoena her. The trial court properly concluded that, as the case was moving fast at the time, the government had adequate cause for failing to disclose until the morning of July 24, 1986. Under the totality of the circumstances, the trial court did not abuse its discretion in finding an exception in admitting Mrs. Jackson's testimony pursuant to Rule 12.1(e).

### B. *Improper Impeachment*

■ The defendant also claims that the district judge committed reversible error in allowing the government to call FBI Agent Harrington to impeach Mrs. Jackson, the government's alibi rebuttal witness. When the government called Agent Harrington, Causey objected on the grounds that this was improper because it was impeachment of impeachment. However, "[u]nder Rule 607 of the Federal Rules of Evidence, the credibility of a witness can be attacked by any party, including the party calling the witness." *United States v. Townsend,* 796 F.2d 158, 162 (6th Cir.1986).

On appeal, Causey now argues that the testimony of Agent Harrington was hearsay and therefore inadmissible. In essence, Causey argues that as Mrs. Jackson claimed only an inability to recall, the testimony of Agent Harrington was therefore not technically inconsistent with her statement. That contention is without merit. A "trial judge has considerable discretion in determining whether testimony is 'inconsistent' with prior statements[,]" *United States v. Dennis,* 625 F.2d 782, 795 (8th

**2.** In exercising its discretionary power to exclude the testimony of undisclosed witnesses for violation of Rule 12.1, "a district court should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the proper-

ly admitted evidence supporting a defendant's guilt, and (5) other relevant factors arising out of the case." *United States v. White,* 583 F.2d 899, 902 (6th Cir.1978) (quoting *United States v. Myers,* 550 F.2d 1036, 1043 (5th Cir.1977), *cert. denied,* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978)).

Cir.1980), and inconsistencies can be found in changes in positions implied through silence or a claimed inability to recall. *United States v. McCrady*, 774 F.2d 868, 873 (8th Cir.1985); *United States v. Rogers*, 549 F.2d 490, 495–96 (8th Cir.1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977). Therefore, the district judge properly admitted the testimony of Agent Harrington reiterating what Mrs. Jackson told him as her prior statement constituted a statement inconsistent with her testimony and, therefore, proper impeachment. *See* Fed.R.Evid. 613.

## C. *Improper Vouching*

Defendant Causey also argues that the leading nature of the questions concerning the prior inconsistent statement upon which Mrs. Jackson was examined and the later testimony of FBI Agent Harrington constituted improper vouching as it improperly put the credibility of the United States Attorney's office in issue in the trial. Again, the defendant's counsel did not object to this testimony or the questioning at the trial. Therefore, our review is limited to whether plain error occurred.

"The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility." *United States v. Dennis*, 786 F.2d 1029, 1046 (11th Cir.1986) (quoting *United States v. Sims*, 719 F.2d 375, 377 (11th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984)). Upon a review of the record, we find that the testimony was not so clearly improper vouching that the trial court should have *sua sponte* moved to exclude the testimony and questioning. If such did constitute improper vouching, it would be impossible for any witness to be questioned at any trial concerning an inconsistent statement made to a government agent. Therefore, we find no merit in the defendant's contention.

## D. *Prosecutorial Misconduct*

The defendant also claims that the prosecutor breached the standards of proper prosecutorial conduct by (1) deliberately misstating to the jury its permissible use of impeachment evidence; (2) deliberately withholding the identity of a crucial witness and witness statements; and (3) improperly interjecting the credibility of the United States Attorney's office in the examination of Maxine Jackson and the subsequent impeachment testimony of the FBI agent. As we have already held that the second and third incidents of alleged prosecutorial misconduct were not improper, we will now consider the prosecutor's allegedly improper final argument.

In final argument, with reference to the defendant, the prosecutor stated:

PROSECUTOR: He made a statement to Aubrey Jackson, as his wife stated, he made a statement that he robbed a bank.
DEFENSE COUNSEL: Objection. There is no statement that he made a statement to his wife. She denied that.
THE COURT: The jury has heard the testimony.
PROSECUTOR: Defendant Causey made a statement to Aubrey Jackson. Told him that he robbed the bank. Told him about the dye pack exploding, he told him about the chase and he gave him an extra hundred dollars, and that was in March of 1986. He furthermore had a wad of money on him at the time.

Thus, the prosecutor improperly argued impeachment testimony as substantive fact.

It is important to note that when the prosecutor misspoke, the defense counsel did not object on the grounds that the evidence could only be used to impeach Mrs. Jackson's credibility and not for any substantive purpose. "It is this Court's inveterate rule not to reverse on grounds not raised in the district court." *United States v. McDowell Contractors, Inc.*, 668 F.2d 256, 257 (6th Cir.1982) (per curiam). *See United States v. Cardinal*, 782 F.2d 34, 36–37 (6th Cir.), *cert. denied*, 476 U.S. 1161, 106 S.Ct. 2282, 90 L.Ed.2d 724 (1986). Therefore, our review is limited to whether or not plain error occurred. *Id.*

As the Supreme Court noted in *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), "the adversary system permits the prosecutor to 'prosecute with

earnestness and vigor[,]' " and a prosecutor may " 'strike hard blows' " as long as he does not " 'strike foul ones.' " *Young,* 470 U.S. at 7, 105 S.Ct. at 1042 (quoting *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can [a court] determine[ ] whether the prosecutor's conduct affected the fairness of the trial." *Young,* 470 U.S. at 11, 105 S.Ct. at 1044. Regarding plain error, the Supreme Court held that the plain error rule:

> [A]uthorizes the Courts of Appeals to correct "only particularly egregious errors," those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." In other words, the plain error exception to the contemporaneous objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."

*Young,* 450 U.S. at 15, 105 S.Ct. at 1046–47 (citations omitted).

In reviewing alleged prosecutorial misconduct for plain error, "it is necessary that the error be measured not within the narrow confines of the argument but against the entire record." *United States v. Ebens,* 800 F.2d 1422 (6th Cir.1986). "To warrant a new trial, however, prosecutorial misconduct 'must be so pronounced and persistent that it permeates the entire atmosphere of the trial.' " *United States v. Krebs,* 788 F.2d 1166, 1177 (6th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986) (quoting *United States v. Lichenstein,* 610 F.2d 1272, 1281 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980)). In the present case, the remark of the prosecutor was very isolated, and the trial court instructed that "the jury has heard the testimony," the clear implication being that the jury would remember what the testimony was. Therefore, although improper, we do not believe that the isolated remark standing alone is "sufficiently prejudicial to rise to the level of plain error." *United States v. Calandrella,* 605 F.2d 236, 254 (6th Cir.),

*cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

### E. *Identification Testimony*

Defendant Causey also argues that the pretrial identification procedures employed in the present case created a likelihood of misidentification which denied him a fair trial.

#### 1. *Martin Hall's Identification Testimony*

Initially Causey argues that the in-court identification of him by witness Martin Hall was the result of a suggestive single photo identification and should therefore have been suppressed. Martin Hall, who testified under grant of immunity, stated that he saw Causey in an automobile with codefendant Crumbie within a few days of the robbery. This was said to have occurred at the Hall residence. He further testified that he did not know Causey and only saw him once before trial, through the window of his house, while Causey was allegedly sitting in a car parked out in the street. When interviewed by FBI agents, Hall described the vehicle to the FBI agents and was shown a mug shot of Causey, whom he identified as one of the men in the car traveling with codefendant Crumbie. Causey argues that this single photo identification procedure was unnecessarily suggestive and the trial court erred in not suppressing the photographic identification and subsequent in-court identification of him by Hall.

In *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court refused to adopt a *per se* rule that an identification based upon examination of a single photograph would be inadmissible at trial. The Court held that a trial court should adhere to the factors articulated in *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972), to determine whether the identification has indicia of reliability such as there is no substantial likelihood of irreparable misidentification. *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253. In sum, the essential question is " 'whether

under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive.'" *United States v. Tyler*, 714 F.2d 664, 667 (6th Cir.1983) (quoting *Neil*, 409 U.S. at 192, 93 S.Ct. at 378).

In *Smith v. Perini*, 723 F.2d 478 (6th Cir.1983), *cert. denied*, 466 U.S. 941, 104 S.Ct. 1920, 80 L.Ed.2d 466 (1984), we reviewed a single person showup of the defendant before a rape victim from her hospital bed, after she had been shown two photo spreads in which she made one selection of some other person and a second selection of the defendant. We held that despite the suggestive nature of the identification procedure, the witness had an independent basis for making the identification, and, therefore, the evidence was properly admitted. We noted that "'[a] defendant is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair. As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification.'" *Smith*, 723 F.2d at 482 (quoting *Summit v. Bordenkircher*, 608 F.2d 247, 253 (6th Cir.1979)).

In evaluating the reliability of an identification, there are five factors to consider:

[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil*, 409 U.S. at 199, 93 S.Ct. at 382.

▪ In the present case, defendant Causey argued that the single photo identification was unreliable for several reasons: (1) no attempt was made to elicit a detailed description before showing the photo; (2) the government did not provide a lineup or other photo array; (3) Hall only saw the person sitting in the car for a short period of time and did not know Causey before

then; (4) Hall could not testify to vital descriptive details of the person he saw in the automobile; and (5) on other occasions Hall indicated that he could not identify Causey as the person in the car. In reviewing those claims, we find that they simply go to the *weight* the testimony should be given by the jury and do not render the testimony so unreliable as to mandate its exclusion. The record indicates that the vehicle in which Causey was allegedly sitting was 20 to 30 feet from the window, and Hall's view was unobstructed looking inside the car. Further, Hall's description of the man in the car was unequivocal and very accurate, matching the description of the defendant, including race, sex, appropriate age, hair length, and noticeable facial features such as facial hair, all of which provide some indicia of reliability. Thus, the government provided clear and convincing evidence that the in-court identification had an origin independent of the single photo showing. *See Marshall v. Rose*, 499 F.2d 1163 (6th Cir. 1974).

▪ After reviewing all of the factors concerning the single photo identification, we conclude that the identification did not give rise to a substantial likelihood of irreparable misidentification. Further, while Causey can point to several reasons why the accuracy of Hall's testimony is questionable, we find that they go to the weight of the testimony and are not enough to render the testimony inadmissible. The trial court properly allowed the jury to hear Hall's testimony and to give his testimony whatever weight the jury deemed proper. Therefore, Martin Hall's testimony was properly admitted. Moreover, in view of the overwhelming evidence of guilt presented at the trial against defendant Causey, error, if any, concerning the single photo identification would in our view be harmless beyond a reasonable doubt.[3]

2. *Bank Employee Pretrial and In-Court Identifications*

Defendant Causey argues that the bank employees' in-court and pretrial identifica-

---

**3.** Causey was overwhelmingly identified by witnesses to the robbery as the man holding the shotgun. Further, the jury was able to examine and compare the bank surveillance photos, which included Causey's picture, to Causey as he appeared in court.

tions should have been excluded, as the length of time between the robbery and the identifications, coupled with the fact that the robbery lasted only a few minutes and all the robbers were black, renders the identifications unreasonably suspect. Further, Causey claims that he was prejudiced because the police did not conduct a lineup identification, and that the photo array used was defective because it only contained suspects wearing beards, while Causey claims he did not have one at the time of the robbery.[4] Finally, Causey claims that the pretrial photo array was prejudicial because it showed him with a small chain or necklace around his neck while the others in the array did not have such a chain.

■■■■■ We conclude that the trial court properly admitted the pretrial and in-court identifications into evidence. A three to four-month delay between the crime and the identification does not render the identification inherently unreliable. *See United States v. Marchand,* 564 F.2d 983 (2d Cir. 1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978) (nine-month delay upheld); *United States ex rel. Clark v. Fike,* 538 F.2d 750 (7th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed. 2d 781 (1977) (five-month delay upheld). Further, the government is not required to conduct a lineup, *see Marchand,* 564 F.2d at 995, and the availability of time for a lineup plays no part in determining whether a photographic spread is impermissibly suggestive. *See United States v. Allison,* 616 F.2d 779 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980). Thus, we find that neither the delay between the crime and the identification nor the failure of the government to conduct a lineup rendered the testimony unreliable.

■■■■■ Further, we find that the photographic array employed was not defective or improper. First, the fact that all people

in the photographic array had beards or facial hair does not render the array prejudicial. *See United States v. Valenzuela,* 722 F.2d 1431 (9th Cir.1983) (a photograph of a defendant in a photo spread showing him wearing a moustache when bank surveillance photos showed the bandit to be clean-shaven was not impermissibly suggestive). The defendant cannot indicate what, if any, adverse inference or prejudice resulted from the depiction of him wearing a chain around his neck. Having viewed the photo array, we conclude that it simply is not of such magnitude as to draw attention to that particular photo. Moreover, the question is not whether the photographic array is suggestive, but rather whether it is impermissibly suggestive. *United States v. Tyler,* 714 F.2d 664, 667 (6th Cir.1983). In this case, the photo was not suggestive, much less impermissibly suggestive.

■■■■■ Finally, defendant Causey claims that the eyewitness testimony of the tellers who were unable to pick him out of a photo array prior to their in-court identification renders their in-court identifications unreasonably unreliable, and, therefore, improperly admitted. In *United States v. Toney,* 440 F.2d 590, 591 (6th Cir.1971), we held that:

> The fact that a witness cannot identify an accused from a photograph is no reason for excluding his testimony identifying the accused in court. When a man is actually seen in court, his expression, the glance from his eyes, the movement of his facial features may be, to a witness, much more convincing that he has seen that man before than observations of a photograph taken of the accused, or views of him at a "line-up" or police "show-up."

The prior failure of the witness to identify the defendant goes only to the weight to be accorded testimony, not its admissibility.

**4.** There appears to be a factual dispute as to whether or not the robber identified as Causey had facial hair at the time of the robbery. The witnesses testified that the man standing under the clock had facial hair. At the time of his arrest, Causey had similar facial hair. Causey claims at the time of the robbery he was clean-shaven. However, the bank surveillance photos which were also admitted into evidence clearly show that Causey had facial hair at the time of the robbery.

*See United States v. Hamilton,* 684 F.2d 380, 383 (6th Cir.), *cert. denied,* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982). In sum, we find that while certain factors may put the accuracy of the identifications in question, the factors are not substantial enough for us to hold that the identifications should have been excluded. The questions raised go to the weight to be given that testimony and not to its admissibility.

### F. *Improper Joinder*

The defendant's final contention is that he was denied a fair trial because of his joinder with the other codefendants. As a general rule, persons jointly indicted should be tried together. *See United States v. Stull,* 743 F.2d 439, 446–47 (6th Cir.1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985). When a defendant seeks severance, he has a heavy burden of showing specific and compelling prejudice, and denial of severance will be overruled on appeal only for a clear abuse of discretion. *United States v. Bibby,* 752 F.2d 1116, 1123 (6th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *United States v. Licavoli,* 725 F.2d 1040, 1051–52 (6th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984). A request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants. We note that the present case is not one of such complexity that the jury could not compartmentalize the evidence. Further, the trial court went to great degree and detail to instruct the jury to consider each defendant separately, as the jury charge makes explicitly clear.

Defendant Causey presents three independent arguments to illustrate the alleged improper joinder. First, he claims that because of the joinder, his attorney could not comment on the failure of the other two defendants to testify, citing *De Luna v. United States,* 308 F.2d 140 (5th Cir.1962), wherein the Fifth Circuit held that in such an instance, it is a trial court's duty to order the defendants to be tried separately. *De Luna,* 308 F.2d at 141. Causey's reliance upon *De Luna* is misplaced. In

*United States v. McKinney,* 379 F.2d 259 (6th Cir.1967), we rejected the Fifth Circuit's majority holding in *De Luna,* holding that even if separate trials were held, defense counsel could not comment upon another defendant's failure to testify in a separate trial. *McKinney,* 379 F.2d at 264–65.

■ Defendant Causey argues that even if he could not comment on the failure of one or the other defendants to testify, if tried in a separate proceeding one of the codefendants would have given exculpatory testimony. However, a motion for severance on the ground of absence of a codefendant's testimony must be accompanied by more than a basic, unsupported contention that a separate trial would afford the defendant exculpatory testimony. *See United States v. Butler,* 611 F.2d 1066 (5th Cir.), *cert. denied,* 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980). A stringent test is to be employed in ruling on a motion for severance in order to obtain a codefendant's testimony. The defendant "must demonstrate: (1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the codefendant will in fact testify if the cases are severed." *Butler,* 611 F.2d at 1071; *United States v. Jackson,* 549 F.2d 517 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).

A review of Causey's motion for severance reveals that he provided no bona fide need for the testimony, could not tell the court which of the two codefendants would take the stand and testify on his behalf, and did not demonstrate that any of the codefendants would have waived their Fifth Amendment privilege against self-incrimination if the case were severed. Therefore, the trial court did not abuse its discretion in refusing to grant the motion.

■ Finally, defendant Causey argues that his trial should have been severed from the codefendants because of the disparate evidence and the danger of transference of guilt or guilt by association. *See Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). How-

ever, a defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. As we noted in *United States v. Warner*, 690 F.2d 545, 553 (6th Cir.1982):

We recognize that, in a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of the evidence relating to each defendant. However, we adhere to the view, as previously stated by our court, that "[t]he jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately."

*Id.* (citations omitted). The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases. *Jackson*, 549 F.2d at 525.

We find that defendant Causey has not met his very significant burden in demonstrating specific and compelling prejudice from being tried with his codefendants. The evidence against the various defendants consisted of substantially the same witnesses and documents, and there was proof of the defendants' working together. Further, the trial court fully instructed the jury to consider the defendants individually. Therefore, the trial court did not abuse its discretion in failing to grant the defendant's motion for severance.

### III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.

KEITH, Circuit Judge, concurring in part, dissenting in part:

I concur in the portion of the majority opinion which finds that there was no improper impeachment or identification, or other prosecutorial misconduct. However, as I believe the majority erroneously resolves the question of whether the government's violation of Fed.R.Crim.P. 12.1 was plain error and warrants a new trial, I dissent.

I agree with the majority that the trial court might not have been sufficiently prescient to divine the possible objections to Mrs. Jackson's testimony, and that this would have been an "easier case" if defense counsel had objected to the testimony on the record. Nonetheless, I believe the majority misconstrues the plain error standard. Plain error is not predicated upon a trial judge's on-the-spot ability to detect an error at trial the moment it occurs. It is not necessarily an error that causes observers instantly to gasp in recognition. The plain error rule was devised to protect a defendant's substantial rights. The case law is clear that the analysis centers upon the degree of injustice to the defendant, not the degree of obviousness to the judge at the time of the error. *See, e.g., United States v. Martin*, 757 F.2d 770, 771 (6th Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985) (plain errors are those which would produce a substantial miscarriage of justice to the defendant if not corrected); Fed.R.Crim.P. 52(b) (plain errors affect a defendant's "substantial rights").

Moreover, in *United States v. Wood*, 780 F.2d 555, 559–60 n. 5 (6th Cir.), *cert. denied*, 475 U.S. 1111, 106 S.Ct. 1522, 89 L.Ed.2d 920 (1986), this court noted that "the explicit nature of the government's obligation under Fed.R.Crim.P. 12.1" may trump the lack of objection by defendant. Thus, I believe that the admission of the testimony was plain error because the failure to disclose this rebuttal alibi witness strikes solidly at the fundamental fairness of this trial, where the defendant relied exclusively on an alibi defense. *See United States v. Mendez–Ortiz*, 810 F.2d 76, 78 (6th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987); *United States v. Perez*, 651 F.2d 268, 273 (5th Cir.1981).

I also believe that the trial court abused its discretion in determining that the government was excused from noncompliance with Rule 12.1 for "good cause" under the exception to the Rule articulated in 12.1(e).

First, the government admitted on the record that it could think of no excuse for

its failure to alert defense counsel to Mrs. Jackson's rebuttal testimony. When the court asked why no notice was given, the assistant United States attorney replied, "your Honor, I really can't say. I don't know if it was oversight on my part." This court should not absolve government "oversight" that conveniently violates a rule and results in conviction. The judiciary should not be made an accomplice to this prosecutorial indiscretion.

Second, it was only at the post-trial stage of the proceedings that the government molded its *ex post facto* reasons to justify its violation of Rule 12.1. I believe these rationalizations are too feeble and too late.

The majority approvingly observes that notice to defendant was provided within forty-eight hours of the time the government became aware of Mrs. Jackson's testimony. Two days is a long time in the life of a trial, where the attorneys are rooted in the same small courtroom and are in constant contact. It would have taken little time or effort for the government to have complied with the Rule, simply by mentioning to defense counsel—either in court during the day's trial, or in the evening via a three minute phone call—that it was attempting to bring Mrs. Jackson to the stand.[1] Instead, defense counsel was apprised of Mrs. Jackson's testimony only *just prior* to when the witness took the stand. The prosecution knew too well that Mr. Causey's case rested solely on his alibi defense, and that by bringing Mrs. Jackson as a surprise witness, they were decimating his defense.

The majority does not attempt to reconcile with their opinion the holdings in *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977), *later appealed*, 572 F.2d 506 (5th Cir.), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), and *United States v. White*, 583 F.2d 899 (6th Cir. 1978). In those cases, the courts found error in the failure to provide notice of an alibi witness. Here, as in *Myers*, "the prejudice to the defense was substantial and

remained unabated." *Myers*, 550 F.2d at 1043. Defense counsel was deprived of the opportunity to interview Mrs. Jackson, to reassess Mr. Causey's story in light of the additional evidence, to re-evaluate his trial strategy, and most importantly, to reconsider his decision to put Mr. Jackson on the stand. *See id.* This is prejudice of the most fundamental sort: the defense counsel had absolutely no opportunity to prepare for the bombshell that was to blow his ego apart.

The trial judge gave as another reason to justify the failure to give notice the fact that certain witnesses in the case had received threats. Even so, the trial court could have granted a protective order for Mrs. Jackson if she had actually felt threatened; protective orders are a daily occurrence in criminal trials. Moreover, there is no evidence that this particular witness had received any threats.

Because I do not believe this court should condone the government's convenient "oversight," I believe the violation of Rule 12.1 mandates a new trial.

Accordingly, I respectfully **dissent**.

---

1. The government argues that it should be excused from the requirement because it was having difficulty subpoening Mrs. Jackson. This circuit has expressly held that Fed.R.Crim.P. 12.1 only requires disclosure of the "identity" of

the alibi witness and does not excuse notice simply because a witness is somehow indisposed. *United States v. White*, 583 F.2d 899, 902 (6th Cir.1978).