955 F.2d 45
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Audrey Teresa LAING, Defendant-Appellant.
 No. 91-3478.
 United States Court of Appeals, Sixth Circuit.
 Feb. 14, 1992.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendant, Audrey Laing, was convicted of possession of cocaine with intent to distribute and travelling in interstate commerce to promote the possession and distribution of cocaine. Prior to trial, Laing sought the suppression of certain identification testimony. Her suppression motion was denied.
 
 
 2
 Laing now appeals and argues that her suppression motion should have been granted and that the evidence at trial was insufficient to support her conviction. Upon a review of the record, we find no merit to these arguments and we affirm the conviction.
 
 I.
 
 3
 Since the facts are extremely relevant to both the suppression and sufficiency of the evidence issues, we detail them with particularity. Detectives Thomasina Jacobs and Ronald Arledge of the Columbus, Ohio, Police Department were members of a drug interdiction team that operated at the airport in Columbus, Ohio. On October 23, 1990, they were monitoring Continental Airlines flight No. 753 from Newark, New Jersey. Flights arriving from Newark are frequently monitored since Newark is considered a drug source city. The officers had no particular advance information about this flight. One of the last passengers to deplane was a black female who appeared nervous and stared at Detective Arledge. On a hunch, the two detectives decided to follow this individual as she progressed along the airport concourse. The suspect was observed stopping at a pay telephone and making a call. During the call she appeared to be looking around to see if anyone was observing her. Upon completing the telephone call the suspect continued along the concourse, looking back several times over her shoulder at the two detectives. She carried no luggage and bypassed the baggage claim area. When it became apparent that she was about to exit the airport, the detectives approached her, identified themselves, and asked if she would talk to them. She agreed, and indicated she had just come from Newark and produced a plastic card without a photograph for identification purposes. She was asked if she could produce a photo ID, at which time she produced a New York driver's license. Detective Jacobs noted the name, address and date of birth on the driver's license. When asked her social security number, she was able to recite it to the officers from memory.
 
 
 4
 Although carrying no luggage, the suspect indicated that she had come to Columbus for a two-week visit with her pregnant sister. She indicated, when asked, she intended to wear her sister's clothing while in Columbus. In talking to the defendant an accent was noticeable, and when asked about her accent she claimed to be from Guiana, but stated she did not have her alien registration card with her. At this point, the officers sought and secured her consent to a pat-down search which revealed no contraband. However, another photo identification card in the name of Virginia Shaw was found in her purse. The suspect identified Shaw as being her sister. The address on Shaw's identification was 2097 Winslow Drive. Since the interrogation and search had turned up nothing entitling the officers to further detain the suspect, they thanked her for her cooperation and walked away, at which point the suspect exited the airport.
 
 
 5
 After the suspect left the airport, the detectives confirmed that an Audrey Laing, the name on the New York driver's license, had travelled from Newark, New Jersey, to Columbus, Ohio, on flight No. 753. Continental records showed that the reservation for the flight had been made one day before and the ticket was paid for in cash. The $254 one-way ticket was the maximum fare charged for this flight, the equivalent of a first-class ticket, although the passenger sat in the coach section near the back of the plane.
 
 
 6
 Two hours after the detectives' encounter with Laing they were called to the Continental Airlines baggage area. Employees had found one suitcase from flight 753 which had been unclaimed. Pursuant to airline policy, the bag was opened and inside were found four packages of white powder. Two packages were tucked in a pair of ladies' red suede boots, size 8- 1/2 medium, which were inside the suitcase. An automated baggage claim ticket was attached to the suitcase and bore the name of Audrey Laing. This claim ticket was computer generated as part of the ticketing process and corresponded to the airline ticket for a passenger on Continental flight 753. No other identification was found in or on the bag.
 
 
 7
 The white powder found in the suitcase turned out to be one-half kilogram of 86 percent pure cocaine. Although the suitcase was returned to the Continental baggage area and placed under surveillance, no one ever came to claim it.
 
 
 8
 From the information recorded from the driver's license shown to the detectives, a criminal records check was made by the detectives' superior officer, and he learned that an Audrey Laing had been arrested in Dade County, Florida, in 1987. A photograph was sent up from Miami and this photograph was shown separately to Detectives Jacobs and Arledge. Prior to being shown the photograph, they were not told that it was the photograph from Florida, and were not asked other than could they identify the person in the photograph. Both officers instantly identified the person in the photo as the person at the airport who identified herself as Audrey Laing. Audrey Laing was subsequently arrested at the address shown on her New York driver's license and was indicted and convicted. At trial, Laing testified in her own behalf and relied primarily on an alibi defense. She claimed that she was in Brooklyn, New York, on March 23, 1990, babysitting for her infant nephew. She claimed she had never been in Columbus, Ohio. In support of this alibi defense, Kendrick Ellis, who like Laing, was from Jamaica not Guiana, testified that he saw Laing in an electronics store in which he worked on March 23, 1990. Ellis testified he had seen Laing in this store on two separate occasions but could not identify the second date she was in the shop. He could not describe what she was wearing on March 23, nor could he name any other customer that had been in the shop on March 23 other than Laing. Ellis also failed to appear, pursuant to his subpoena on two consecutive days, before finally appearing and testifying.
 
 II.
 
 9
 Against this factual backdrop, we first address Laing's contention that the evidence at trial was insufficient to support her conviction. Insofar as the jury was concerned, the trial revolved around whom one was to believe. The jury elected to credit the testimony of the officers and that testimony was more than adequate to form the basis for a reasonable juror to conclude that Laing was guilty of the offenses charged. Once the trier of fact accepted the officers' testimony that Laing was the one that they interviewed in the Columbus airport, there was little left of the case. Laing was travelling under her own name and using her correct home address. Although she had placed no identification on the suitcase herself, thus feeling that it could not be traced to her, the computer generated luggage claim check placed on the baggage by Continental Airlines and bearing her name, was sufficient circumstantial evidence to tie her to the unclaimed bag. The jury's conclusion in this regard is also supported by the fact that Laing's story that she was going to spend two weeks visiting a sister in Columbus, Ohio, yet had no luggage, was inherently incredible.
 
 
 10
 Laing's argument that the officers' identification testimony of her should have been suppressed is predicated entirely upon the fact that they were shown a single photograph of her prior to the in-court identification. Although a limited photo display of this nature under some circumstances might sufficiently taint a subsequent identification to the degree that it would be rendered unreliable, we do not believe such to be the case here. In United States v. Causey, 834 F.2d 1277, 1284 (6th Cir.1987), we noted that pursuant to the decision of the United States Supreme Court in Manson v. Braithwaite, 432 U.S. 98 (1977), there is no per se rule that an identification following the examination of a single photograph would be inadmissible at trial. A totality of the circumstances test is applied and that test is primarily taken from the five-factor test set forth in Neil v. Biggers, 409 U.S. 188 (1972). In Biggers, the Court indicated
 
 
 11
 [t]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 
 
 12
 Id. at 199-200.
 
 
 13
 Although the Biggers test is helpful to some degree, it is somewhat difficult to apply to the facts here. However, when a totality of the circumstances test is applied, it is clear that we are dealing with two experienced police officers trained to investigate and observe. They observed the defendant for at least 15 minutes, and a good portion of that time was spent in face-to-fact conversation. It is significant also that although they let Laing proceed at that time, they had reason to remember her because what the officers learned made them suspicious--they just did not have enough to hold her at the time.
 
 
 14
 Additionally, although shown only one photograph, it was shown to them individually and they were simply asked if they could recognize the person in the photo. They were not asked, for example, "Is this the woman you questioned at the airport?"
 
 
 15
 The officers were able to give a good description of Laing and were both very positive in their in-court identifications. The district court did not err in denying the suppression motion.
 
 
 16
 AFFIRMED.