SIMMONS 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-143-CR





DENNETTE BROTHERS SIMMONS, A/K/A DENNETTE JAMES,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 41,003, HONORABLE STANTON B. PEMBERTON, JUDGE PRESIDING



 





 A jury found Dennette Brothers Simmons, a/k/a Dennette James, appellant, guilty
of murder. Tex. Penal Code Ann. § 19.02 (West 1989). The district court assessed punishment
at imprisonment for forty years. We will affirm the conviction.



BACKGROUND


 Only an abbreviated version of the facts is necessary for the disposition of the
appeal.

 On September 29, 1989, Sergeant Frank Elwood James and appellant picked up
Sergeant James's five-year old son, Frank Terrel James, the decedent, in Tennessee and brought
him to Killeen, Texas. Sergeant James testified that he retrieved his son from the child's mother
because he feared the child was being abused. Evidence presented at trial demonstrated that the
child lacked the coordination of other children his age and that the child would stumble and fall
on occasion.

 The evidence demonstrated that, before his death, the child was taken out of school. 
The Killeen Police Department took two written statements made by appellant that were admitted
into evidence. The statements averred that, during the week before the child's death, the child
hit his head in his temple area and, later that same week, the child staggered and walked into a
wall at Scott and White Hospital.

 Appellant testified that on the morning of December 3, 1989, the child had
complained to her of a headache and had gone upstairs to his room to lie down. Early that same
afternoon, appellant went to the child's room to check on him and noticed that he was not
breathing. She stated that she carried the child downstairs and called an ambulance.

 Paramedic Mark Munger and Firefighter-Paramedic Jeffrey Sharp were dispatched
for the emergency call. Sharp examined the child and found no pulse. Sharp carried the child
to the ambulance which transported the child to Darnall Army Hospital.

 Dr. David Hardy, a pediatrician and pediatric critical care physician at Scott and
White Hospital, first saw the child at around 5:00 p.m. on December 3, 1989. He testified that
the child's symptoms indicated a pattern common in individuals who have severe brain injury and
that he noticed swelling and bruising on the right side of the eye and face. Dr. Hardy further
testified that he observed multiple scars and marks on the child's body. A CT scan of the child's
head indicated that there was a subarachnoid hemorrhage, i.e., a diffuse layer of blood on the
outside of the brain, and that blood had collected within a portion of the brain that normally does
not collect blood. Dr. Hardy testified that the injuries to the child were consistent with a
deceleration injury, (1) which could have been caused accidentally or intentionally. However, he
maintained that the child's injury was not consistent with the history provided to him by appellant. 
He stated that, at the time he first examined the child, he could not rule out that the child's death
was caused by old trauma that had been reactivated; he subsequently rejected this hypothesis. The
child was pronounced dead at 12:07 p.m. on December 4, 1989.

 On December 6, 1989, Dr. Jeffrey Barnard, a Dallas County Medical Examiner,
conducted the autopsy on the body of the child. Dr. Barnard classified the death as homicide. 
Certain tests that he performed indicated that some injuries occurred three to seven days before
the date of death, while other injuries occurred three days or less before the death. Dr. Barnard
testified that a history of a fall seven or eight days before death resulting in symptoms of a
headache two days before death and unconsciousness one day before death was not possible in
view of his findings.

 On cross-examination by defense counsel, Dr. Barnard was asked if he recalled,
or had any notes indicating, a conversation with Officer Caufield on February 7, 1990; Dr.
Barnard answered in the negative. The specific testimony that gives rise to this appeal is set forth
as follows:



Q: In his [Officer Caufield's] notes, if he stated he talked to you on that date and
you told him that you noted that at this point, you could not say that the
deceased had not received the head injury in a fall. However, there should
have been obvious symptoms from the injury.


 Do you recall telling him that?


A: I don't recall saying that. With varying aged injuries, that certainly can't be,
so I don't recall saying it.


Q: You do recall talking to him on the 7th, though?


A: I don't recall talking to him on the 7th.



 Officer Lee Caufield of the Killeen Police Department testified that the child was
transported to Dallas on December 5, 1989, so that an autopsy could be performed. The next
day, Officer Caufield went to Dallas and spoke with Dr. Barnard. Officer Caufield testified that,
at that time, the doctor would not conclusively state whether the child's death resulted from
accidental or intentional injuries.

 After both sides had rested, appellant made an oral motion to reopen the evidence;
she requested permission to recall Officer Caufield to question him about a conversation that he
had with Dr. Barnard on February 7, 1990, and that was reflected in the officer's notes. The
State did not object to the motion but made it known that it would object on hearsay grounds if
appellant attempted to introduce the substance of the conversation rather than merely the fact that
the conversation occurred. After questioning by the trial judge, appellant did not provide a legal
exception to the hearsay rule for the proffered testimony.

 The trial court then attempted to elicit from appellant her basis for the admission
of the further testimony. Both the court and the State challenged the actual impeachment value
of the proffered testimony. Appellant could not convince the court that a conflict between the
proffered testimony of Officer Caufield and the previous testimony of Dr. Barnard existed;
therefore, the district court denied the motion to reopen the evidence.

 Appellant then made the following bill of exception:



I anticipate if Officer Caufield were called to testify, I would ask him did he talk
to Dr. Barnard, does he recall if he talked to Dr. Barnard on two-seven-ninety, and
that his response would be yes.


That his notes indicated that.


. . . .


I would ask Caufield did he also advise you that he could not say that the deceased
had not received the head injury in a fall; however, there should have been obvious
symptoms from the injury, that Officer Caufield would say his notes so reflect.



 Appellant maintains that testimony elicited from Dr. Barnard on cross-examination
may have given the jury the impression that the February 7th conversation between Dr. Barnard
and Officer Caufield never took place. Appellant argues that she should have been allowed "to
recall Officer Caufield to establish both that such a conversation had taken place and that Dr.
Barnard as late as February 7th could not exclude the possibility that the deceased had received
the head injury in a fall."



DISCUSSION


 In a single point of error, appellant contends that the district court erred in refusing
to allow appellant to reopen the testimony and recall Officer Caufield to testify that he had a
conversation with Dr. Barnard on February 7, 1990. (2) Appellant contends this proffered testimony
would establish that the February 7th conversation took place and that, over two months after the
child's death, Dr. Barnard could not rule out the possibility that the child had received the head
injury in a fall.



Preservation of Error

 As a preliminary matter, the State maintains that appellant's point of error was not
preserved for review because the basis for appellant's complaint on appeal is different from the
basis of her objection at trial. See DeBlanc v. State, 799 S.W.2d 701, 718 (Tex. Crim. App.),
cert. denied, 111 S. Ct. 2912 (1990); Tex. R. App. P. 52(a). Specifically, the State contends that
appellant's argument on appeal is that testimony that the conversation took place and about its
details was admissible to impeach Dr. Barnard even if the doctor had testified that he did not
recall the conversation; the State argues that appellant never presented this argument to the trial
court.

 During the discussion relating to the motion to reopen testimony, the State did not
object to the reopening in general, but did voice its objection to the testimony on the ground of
hearsay. Appellant responded that she intended to use the testimony for the purpose of
impeaching Dr. Barnard with a prior inconsistent statement. The Court then questioned appellant
as to whether the proffered testimony would conflict with the previous testimony of Dr. Barnard
and thus would constitute an inconsistent statement. Appellant responded:



As I recall the testimony, it was different, that he [Dr. Barnard] qualified it and he
denied, I don't know if denied is the proper word, -- he said something like I don't
know what Caufield's notes said. I don't think he ever agreed with the last
paragraph, which was what he was questioned on specifically.



 Both parties eventually agreed that their recollection of Dr. Barnard's testimony
was that the doctor did not recall having a conversation with Officer Caufield on the date in
question and did not recall the substance of the conversation. Because appellant, at the time of
trial, could not demonstrate to the court how the proffered testimony could impeach Dr. Barnard,
the district court denied the motion to reopen the evidence.

 A witness may be impeached by proof of a prior inconsistent statement; the
statement may be oral or written and may be given under oath or not. Miranda v. State, 813
S.W.2d 724, 735 (Tex. App.--San Antonio 1991, pet. ref'd). Rule 612(a) of the Texas Rules of
Criminal Evidence, which governs the admission of prior inconsistent statements, provides:



Examining witness concerning prior inconsistent statement. In examining a
witness concerning a prior inconsistent statement made by him, whether oral or
written, and before further cross-examination concerning, or extrinsic evidence of,
such statement may be allowed, the witness must be told the contents of such
statement and the time and place and the person to whom it was made, and must
be afforded an opportunity to explain or deny such statement. If written, the
writing need not be shown to him at that time, but on request the same shall be
shown to opposing counsel. If the witness unequivocally admits having made such
statement, extrinsic evidence of same shall not be admitted. This provision does
not apply to admissions of a party-opponent as defined in Rule 801(e)(2).



A statement admitted under Rule 612 may be used only for impeachment purposes and not for
substantive reasons. Miranda, 813 S.W.2d at 735.

 This appeal concerns whether evidence of a prior conversation is inconsistent, for
the purposes of Rule 612, when the witness does not recall the conversation. Both parties agree
that no Texas court has determined this issue. 

 Appellant directs our attention to a federal case which concerns Rule 612's federal
counterpart, Federal Rule of Evidence 613. In United States v. Causey, 834 F.2d 1277 (6th Cir.
1987), cert. denied, 486 U.S. 1034 (1988), the government had called a witness to rebut the
testimony of a defense alibi. The witness claimed not to recall a conversation she had with an
F.B.I. agent. The government then called the agent to testify about the conversation. Rejecting
the defendant's allegation that the testimony by the agent about the conversation was not
technically inconsistent with the witness's statement that she did not recall the conversation, the
court held that the trial court did not err in allowing the agent to testify about the conversation.

 Integral to the court's decision in Causey, we believe, is the court's conclusion that
"[a] 'trial judge has considerable discretion in determining whether testimony is "inconsistent"
with prior statement[s]' . . . and inconsistencies can be found in changes in positions implied
through silence or a claimed inability to recall." Id. at 1283. (citations omitted). In addition, the
trial court's determination whether to admit or exclude evidence is reviewed by the abuse of
discretion standard. Montgomery v. State, 810 S.W.2d 372, 378-80 (Tex. Crim. App. 1990).

 Based upon the evidence presented during trial, we conclude that the trial judge was
in the best position to properly assess the impeachment value of the proffered testimony, and we
conclude that the trial court did not abuse its discretion in refusing to reopen the evidence to allow
Officer Caufield to testify.

 Even assuming that the trial court's decision was erroneous, we conclude that
appellant cannot show harm. To show reversible error in the admission or exclusion of evidence,
in addition to an error in the trial court's ruling, appellant must show that such admission or
exclusion was harmful. Tex. R. App. P. 81(b)(2).

 In determining whether error is harmless under Rule 81(b)(2), we are to focus not
on the propriety of the outcome of the case, but we are instead concerned with the integrity of the
process leading to the conviction. Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989);
Tex. R. App. P. 81(b)(2). Factors that should be considered include: (1) the source of the error;
(2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the
error's probable collateral implications; (5) how much weight a juror would probably place on the
error; and (6) whether declaring the error harmless would encourage the State to repeat it with
impunity. Harris, 790 S.W.2d at 587.

 Procedurally, we must first isolate the error and all its effects, using the
considerations set out above and any other considerations suggested by the facts of the cause, and
second ask whether a rational trier of fact might have reached a different result if the error and
its effects had not occurred. Harris, 790 S.W.2d at 587-88. We do not focus on the weight of
the other evidence of appellant's guilt, but instead focus on whether the error might have
prejudiced the jurors' decision-making. In other words, our responsibility is to determine whether
the trial was an essentially fair one. Id. 

 We note that Officer Caufield testified that Dr. Barnard had previously told him
that the death could have been accidental. Thus, the general substance of the proffered
impeachment testimony was admitted in evidence. Additionally, the proffered testimony merely
supplemented Dr. Barnard's inability to recall a specific conversation. Had the evidence been
admitted, its sole use would have been to impeach an otherwise inconclusive statement. We hold
that, even if the trial court erred in excluding the evidence, the decision-making process of the
fact-finder was not prejudiced. Accordingly, we overrule appellant's sole point of error.



CONCLUSION


 Finding no error, we affirm the conviction.



 

 Mack Kidd, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Affirmed

Filed: May 26, 1993

[Do Not Publish]

1.   A deceleration injury is one that occurs when a moving body comes to an abrupt
halt, as when a body is thrown against the windshield during an automobile accident.
2.   In her point of error, appellant refers to the date of the alleged conversation as
February 7, 1989. We will assume for purposes of this appeal that the correct date of the
alleged conversation is February 7, 1990.