Frank W. SMITH, Petitioner-Appellant,

v.

E.P. PERINI, Respondent-Appellee.

No. 82–3267.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 25, 1983.

Decided Dec. 15, 1983.

Certiorari Denied April 16, 1984. See 104 S.Ct. 1920.

J. Dean Carro, argued, Akron, Ohio, for petitioner-appellant.

Dain N. Deveny, argued, Connie Harris, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before JONES and WELLFORD, Circuit Judges, HARVEY, District Judge.*

WELLFORD, Circuit Judge.

Appellant in this cause was convicted of rape and felonious assault in state court. He appeals the district court's denial of his petition for a writ of habeas corpus, asserting that the identification process used was so suggestive as to deny him due process under the Fourteenth Amendment.

Appellant Smith was indicted on one count of rape and one count of felonious assault. He was tried before a jury in an Ohio court. Prior to trial, appellant filed a motion to suppress evidence relating to the victim's identification of appellant on the grounds that the procedures used were so suggestive as to deny him due process. After a hearing, the trial court overruled the motion, and the evidence was admitted at trial. The record does not reveal specific factual findings by the trial court on this issue. The jury found appellant guilty of rape and felonious assault, and he was given concurrent sentences on both counts.

The conviction was appealed to state appellate court. The conviction and sentence for felonious assault was reversed and the conviction for rape was affirmed. The challenge of the identification procedures was rejected after specific factual findings were made by the Ohio appellate court. Leave to appeal to the Ohio Supreme Court was denied.

Appellant then petitioned the district court under 28 U.S.C. § 2254 for a writ of habeas corpus, again challenging the identification procedures. The matter was referred to the magistrate, who extensively reviewed the transcript in light of applicable law and recommended that the petition be denied. The district court adopted the

---

* The Honorable James Harvey, United States District Judge for the Eastern District of Michigan, sitting by designation.

magistrate's report and denied the petition, and appellant now appeals the district court's denial of his petition.

The rape victim in this case was a fifteen-year old girl; there were no other witnesses to the incident. She testified that on the afternoon of the incident she walked through a park to a shopping mall. On her way there, she noticed a man sitting on a log near the path. On her way back a short time later, she noticed the same man in the park. As she passed him, he told her to stop or he would kill her. As she started to scream, the man took her by the throat, choked her and dragged her into the woods and raped her.

After the assailant began choking her, the victim testified that she lost consciousness during much of the traumatic episode. She regained consciousness briefly and could identify her assailant.

The next time she regained consciousness, her assailant was gone. As she left the park, however, she saw her attacker again at a distance talking with another man. She ran home immediately, reported the rape, and was taken to a hospital.

The afternoon of the attack, the victim gave a description of the attack to an investigating officer. She described her assailant as white, 30–35 years old, with dark hair and a mustache. The next day, while the victim was still at the hospital, an officer conducted a photograph identification process. The victim was presented with more than 150 photographs of white sex offenders. At one point she selected one of the photographs. She told the officer that one man in a photograph was not her assailant because he was "too skinny," but that he had the same type of mustache. The officer then told her that this particular man was in jail.

The victim subsequently selected one other photograph from among the large group, that of appellant depicting him without a mustache and with longer hair, as the one most likely to be her attacker. The officer

testified that she told him that she thought that this was "the man" but that she needed to see him with a mustache.

Appellant was then taken into custody and brought to the hospital. The victim was very apprehensive, so arrangements were made for her to stay in her darkened room and to observe appellant in the hallway through a glass panel in the door without being seen herself. Appellant was brought down the hall to stand in front of the glass panel to the victim's room, and then was led away.

When the officer returned to the victim's room, she said, "That's not him." The officer testified that at this moment she was very frightened, and he told her to take a longer look to be certain.

When appellant was brought into the hallway again, the victim asked the officers to have him shrug his shoulders. When the officer returned to her room and asked her what she thought, she asked to see appellant with his hands around the officer's throat. After appellant did so, the victim stated that she was sure that appellant was her attacker.

Appellant argues that evidence of the identification should have been suppressed because (1) the victim picked out two photographs and only settled on appellant's when she was told that the other suspect was in jail; (2) the show-up procedure was unnecessarily suggestive; (3) the victim initially stated that appellant was not her attacker; and (4) the victim did not identify appellant as her attacker until after the choking simulation. Appellee argues that the identification had sufficient indicia of reliability, and that the factual findings of the Ohio appellate court were entitled to a presumption of correctness under 22 U.S.C. § 2254(d).

We hold that the state appellate court findings of fact[1] are entitled to a presumption of correctness under *Marshall v. Lonberger*, —— U.S. ——, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), *Sumner v. Mata*, 455

---

1. Each of the factors enumerated in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *infra*, were considered in these findings.

U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (*Sumner II*), and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (*Sumner I*). The ultimate finding of whether the identification was sufficiently reliable so as not to offend appellant's rights under the due process clause is, of course, a question of law, subject to full review by this court. *Sumner v. Mata (Sumner II), supra.*

Appellant does not challenge the photographic array procedures utilized, although he contends that the victim chose two photographs as possibly depicting her attacker. He does argue, however, that the show-up at the hospital was suggestive and unnecessary. Appellant acknowledges that while show-ups are frowned upon, they are not per se unconstitutional. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Summit v. Bordenkircher,* 608 F.2d 247, 252 (6th Cir.1979).

The primary Supreme Court decisions to be considered are *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In *Biggers,* the respondent had been convicted of rape after a jury trial and the evidence consisted in part of a stationhouse identification of respondent by the victim. The Court first noted that in *Stovall v. Denno, supra,* a claim that "the confrontation conducted . . . of law," had been carefully considered and rejected in light of the "totality of the circumstances." 409 U.S. at 196, 93 S.Ct. at 380. The *Biggers* court then considered whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive. The Court stated that the factors to be considered in evaluating the likelihood of misidentification included the extent of the opportunity to view, the focus of attention of the viewer, reliability of the description given, degree of certainty of identification and the lapse of time between the episode and the subsequent viewing. 409 U.S. at 199–200, 93 S.Ct. at 382–383.

In *Manson v. Brathwaite, supra,* wherein a single photograph of the potential drug dealer was presented to the witness, the Court resolved a split of authority in the Courts of Appeals that had developed since *Biggers.* One approach, the *per se* approach, had required exclusion of out-of-court identification, without regard to reliability, whenever it had been obtained through unnecessarily suggestive confrontation procedures. The more lenient approach continued to rely on the totality of the circumstances, permitting the admission of evidence if, despite the suggestive procedures, the identification possessed certain features of reliability.

The Court in *Manson* adopted the second, more lenient approach, holding the identification evidence admissible, stating that:

> [R]eliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-*Stovall* confrontations. The factors to be considered are set out in *Biggers.* 409 U.S. at 199–200, 93 S.Ct. at 382–383. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

432 U.S. at 114, 97 S.Ct. at 2253.

This Court has utilized the *Biggers* factors in several decisions. *See U.S. v. Hamilton,* 684 F.2d 380 (6th Cir.), *cert. denied,* 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982); *Summit v. Bordenkircher,* 608 F.2d 247 (6th Cir.1979); *U.S. v. Russell,* 532 F.2d 1063 (6th Cir.1976).

In *U.S. v. Russell, supra,* the appellant was convicted of bank robbery. At trial, three witnesses identified appellant. The first witness selected a photograph from an array. No suggestive conduct occurred before her selection of appellant's picture. Her identification was not entirely positive. The FBI agent told her after her selection

that this was "the guy we think probably did it."

The second witness also made a photographic identification. She appeared to be under the assumption that the robber's photograph was in the array presented to her. She narrowed the possibilities down to two photographs, and finally chose one. At this point, the agent told her that she had chosen the wrong one, and that the other photograph was of the person they believed to be guilty.

The third witness was also shown a photographic array, but was unable to make an identification. He made an identification of appellant, however, but only after he observed appellant in manacles just before the preliminary hearing.

This Court held that the identification by the first witness was admissible, primarily because she had already selected the photograph before the suggestive comment was made. 532 F.2d at 1068. The Court found, however, that the photographic identification procedure for the second witness was impermissibly suggestive, and that it created a substantial likelihood for misidentification of appellant. Therefore, the Court held it inadmissible. *Id.* As to the third witness the Court held that it was suggestive to permit a witness to observe a defendant in manacles. It consequently held that, in order for the identification to be admissible, the trial judge had to find that this witness' identification of appellant had to be on a basis independent of his custodial situation in manacles. *Id.* at 1069.

■ The victim in this case had a good opportunity to view her assailant since the attack occurred during daylight and she was confronted frontally when she was stopped on the path and when she regained consciousness during the attack. Her attention was focused upon her attacker during a very personal and humiliating experience at close range. The victim's description of the man, despite lapses into unconsciousness, and while generalized, was accurate. The one-day time span between the attack and the time of identification was quite short. The identification of appellant, furthermore, was reasonably sure under the circumstances.

The most serious question raised by appellant is directed to the factor of the level of certainty demonstrated at the confrontation. The victim's initial reaction was that appellant was not the man. At trial, however, the victim and the officer testified that the reason for her initial reaction was that she was frightened that if she identified appellant that he would somehow "get" her. The district court found that this adequately explained her initial reaction. In view also of the certainty displayed after the second viewing, there appears to be ample evidence to support the state appellate court's finding that the identification was sufficient to meet *Biggers* standards. "A defendant is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair. As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification." *Summit v. Bordenkircher,* 608 F.2d 247, 253 (6th Cir.1979) (citing *Manson v. Brathwaite, supra*). In this case we cannot find the identification evidence to have been unreliable so as to deny Smith a fair trial, nor did it involve in our view substantial likelihood of misidentification.

■ Appellant argues that the choking simulation at the victim's second viewing was impermissibly suggestive. We conclude, however, that these circumstances were not so suggestive as to deny appellant's right to due process, as was the identification of the defendant in manacles in *Russell, supra.* Even if the procedures were suggestive to some degree, in this case, there was an independent basis for the victim's identification; the selection of appellant's photograph from the array presented her, a situation unlike that in *Russell, supra.* We affirm, therefore, the district court's decision to deny appellant's petition for a writ of habeas corpus.

Accordingly, the judgment of the district court is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

The conviction in this case arises from a rape allegedly committed by the appellant on the afternoon of July 12, 1979. The victim, a 15 year old girl, identified the appellant as her assailant on two separate occasions. The first occasion was when she picked the appellant's photograph out of a display of about 150 to 200 photographs of white, male sex offenders on the afternoon after she had been attacked. The second occasion took place later that same afternoon when the petitioner was taken to the hospital where the victim was being treated. There was no other substantial evidence linking appellant with the crime. The circumstances surrounding the identification persuade me that the pretrial identification procedures utilized in this case were unnecessarily suggestive. They also created a substantial likelihood of irreparable misidentification. Therefore, I respectfully dissent.

Due process requires that identification testimony be suppressed if the pretrial identification procedures were so impermissibly suggestive as to give rise to a "substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The applicable due process doctrine requires us to make a three-pronged analysis. First, we must consider whether the pretrial identification procedures were suggestive. If the identification procedures were suggestive, we must then consider whether they were necessary under the circumstances. If the procedures are found to be suggestive and unnecessary under the

circumstances, we must then determine whether they produced a substantial likelihood of irreparable misidentification. *United States v. Russell,* 532 F.2d 1063, 1067 (6th Cir.1976). *Accord United States ex rel. Hudson v. Brierton,* 699 F.2d 917 (7th Cir. 1983).

There can be no serious question here that the show-up confrontation at the hospital was suggestive. Indeed, one-on-one confrontations between the victim of a crime and a suspect have been universally condemned for their inherent suggestiveness. *See Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). For example, this Court in *Summit v. Bordenkircher,* 608 F.2d 247, 252 (6th Cir.1979), *aff'd sub nom., Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), recognized that

> [a] show-up is inherently suggestive. When only one person is presented to a witness, there is a natural tendency for the witness to feel obligated to provide a positive identification.

Similarly, the Seventh Circuit has also recognized that

> [w]ithout question, almost any one-to-one confrontation between a victim of crime and a person to whom the police present to him as a suspect must convey the message that the police have reason to believe him guilty.

*United States ex rel. Kirby v. Sturges,* 510 F.2d 397, 403 (7th Cir.), *cert. denied* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). I do not read the majority opinion as holding that the show-up confrontation at the hospital was not suggestive.[1] In

---

1. The majority opinion concludes that even if the show-up was suggestive, there was an independent basis for the witness' identification, that being the selection of appellant's photograph. Although not challenged by the appellant, the photographic array also appears to have been tainted by undue suggestiveness. The witness selected two photographs from the array, one depicting a man with a mustache, while the other depicted the appellant without a mustache. The witness testified at the preliminary hearing that the men in the two photographs looked like her assailant, but that the one with the mustache was too skinny. The

police then told her that this man was in jail whereupon the witness settled on appellant's picture. This conduct was highly suggestive. In *United States v. Russell, supra,* a witness' somewhat tentative identification of a suspect was confirmed by an F.B.I. agent who told her that the picture she had selected was "the guy we think probably did it." Since this occurred after her selection of the picture we refused to find error in the trial court's admission of the witness' identification testimony. 532 F.2d at 1067–68. Here, however, the suggestive conduct occurred prior to the witness' selection of appellant's picture. Under such circumstances

fact, it would be difficult to imagine a more suggestive procedure than that utilized in this case.

Nor does it appear that the show-up was necessary under the facts of this case. In *Stovall v. Denno, supra,* a husband and wife were attacked in their home one night by an intruder. The attack left the husband dead and the wife near death in a hospital. The police arrested a suspect and, fearing that the wife, who was the only witness to the crime, would expire, brought him to the hospital where he was identified in a one-on-one confrontation. While noting that the practice of showing suspects singly to persons for purposes of identification rather than as part of a lineup had been widely condemned, the Supreme Court nevertheless held that there was no due process violation because the exigencies of the situation demanded immediate action. *Stovall, supra* 388 U.S. at 302, 87 S.Ct. at 1972. Conversely, no such exigencies existed in the case before us. Although the witness was hospitalized, nothing in the record indicates that she was dying or near death. Nor is there any indication that the witness could not have visited the police station to view a lineup, or that a lineup could not have been arranged at the hospital. In short, nothing in the record before us justified the use of the show-up confrontation. Consequently, consideration of the first two prongs of the required analysis leads me to conclude that the pretrial confrontation procedures utilized in this case were unnecessarily suggestive. This conclusion, however, does not establish by itself that petitioner's due process rights were violated. *See Stovall, supra* at 302, 87 S.Ct. at 1972. Such a violation is only established where the unnecessarily suggestive pretrial confrontation procedures have produced a "substantial likelihood of irreparable misidentification." *Simmons, supra* 390 U.S. at 384, 88 S.Ct. at 971.

The Supreme Court has held that the admissibility of identification testimony stemming from suggestive confrontation procedures depends on whether the identification was reliable under the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *See also Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (reliability is the "linchpin" in determining admissibility of identification testimony). The Court then stated that the following factors must be considered in determining the reliability of the identification:

1) the opportunity of the witness to view the criminal at the time of the crime;

2) the witness' degree of attention;

3) the accuracy of the witness' prior description of the criminal;

4) the level of certainty demonstrated by the witness at the confrontation; and

5) the length of time between the crime and the confrontation.

*Neil v. Biggers, supra* 409 U.S. at 199–200, 93 S.Ct. at 382–383.

I cannot accept the majority's assessment of these factors. Perhaps the most troublesome statement in the majority opinion is its assertion that the witness' "attention was *focused* upon her attacker during the assault." I am unable to find any support for this statement in the record.[2] In fact, the evidence directly contradicts this assertion. The witness' own testimony established that she was unconscious during most of the assault. Indeed she testified that she was conscious for only a few seconds and that when conscious, she "wasn't even looking at [her assailant] most of the time." I cannot agree that it is fair to conclude on these facts that the witness' attention was "focused" on her attacker.

I cannot agree that this selection could serve as an independent basis for her identification.

**2.** The majority holds that the state appellate court's factual findings on the identification are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). This presumption does not attach, however, where it appears, inter alia, that the material facts were not adequately developed by the state court, or where the factual determination is not fairly supported by the record. 28 U.S.C. §§ 2254(d)(4), (8).

Nor can I agree with the majority's finding that the witness had a good opportunity to view her assailant. Although the record indicates that the witness noticed her assailant on her first trip through the park, there is nothing to indicate that she had any reason to pay any attention to his features. Furthermore, when she was attacked on her return trip through the park, her assailant approached her from behind. When she turned to confront him, she testified that he "moved around," and that she faced him for no more than five to ten seconds. The state appellate court found that her assailant then "put his hand over her mouth, the other hand around her throat *from the rear,*" and dragged her into the woods. [emphasis added] Thus the evidence established that during the period in which her attention was drawn to her assailant before she lost consciousness, she faced him for only five to ten seconds while he was moving around. Thus I am unpersuaded that her opportunity to view her assailant was as good as the majority declares.

With the exception of the time span between the crime and the confrontation, I am convinced that the remaining factors also militate against a finding that the witness' identification was reliable. First, the witness gave a very general description of her assailant. One need only ponder for a moment over how many white males there are who are 30–35 years old with dark hair and a mustache before it becomes apparent that this description would fit a wide variety of people. There is, then, no wonder that the majority concluded that the appel-

lant fit this description. The pool of such persons who could is wide indeed.

Second the witness' identification of the appellant was anything but certain. She not only failed to identify him at the initial confrontation despite its inherent suggestiveness, she specifically said, "That's not him." Then when the appellant was brought back for a second confrontation, he was asked to simulate parts of the assault before the witness could identify him. There is every reason to believe that it was the *act* that the victim remembered, not the actor. Although the majority is willing to accept the witness' explanation that her initial failure to identify the appellant as her assailant was because she was afraid that he would do harm to her, the evidence clearly indicates that she was indeed uncertain that the appellant was her attacker.[3] Given the witness' limited opportunity to observe her assailant, her strong initial reaction that the appellant was not her assailant, and the clear evidence of doubt from her own testimony, I am unable to conclude as the majority does, that the identification was sufficient to meet the *Biggers* standards.

In conclusion, it is important to remember that the witness was a frightened, fifteen year old girl who had just endured a traumatic, humiliating and frightening experience. Therefore, it would not be unusual under such circumstances for her perceptual abilities to be impaired. In *United States v. Russell, supra,* we admonished that

[t]here is a great potential for misidentification when a witness identifies a stran-

---

**3.** At page 62 of the transcript of the suppression hearing, the following colloquy took place:

Q And did you identify this as the individual that attacked you? [sic]
A Yes.
Q Was there any occasion that you denied or told them that it wasn't him?
A Well, I had a question because—
Q What question did you have?
A His hair, I guess it was his hair.
Q What was the question that you had about his hair?
A Well, I don't know, I wasn't sure. His hair wasn't combed, I guess this guy, his hair was combed.

Q Okay. The guy that attacked you had his hair combed.
A Yes.
Q And this individual that they brought to the hospital, his hair was all messed up?
A I don't know. He was different.
This testimony does not support a conclusion that the only reason the witness failed to identify the appellant as her attacker at the first confrontation was because she was afraid that he would harm her. Instead this testimony, taken as it was when the witness had no apparent fear of retaliation, reveals the existence of genuine doubt.

ger based solely upon a single brief observation, and this risk is increased when the observation was made at a time of stress or excitement. Since this danger is inherent in every identification of this kind, *courts should be especially vigilant to make certain that there is no further distortion of the possibly incomplete or mistaken perception of a well-meaning witness by suggestive or other unfair investigatory techniques.* [emphasis added] 532 F.2d at 1066. Since I believe that the majority opinion so seriously understates the potential for misidentification in this case, I respectfully dissent.