884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Alex RODGER, III, Defendant-Appellant.
 No. 88-5662.
 United States Court of Appeals, Sixth Circuit.
 Sept. 8, 1989.
 
 Before WELLFORD and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Alex Rodger, III appeals from his conviction by jury verdict of armed bank robbery in violation of 18 U.S.C. Sec. 2113(d). This case has been referred to this panel pursuant to Rule 9(a), Rules of the Sixth Circuit. Upon examination of the record and the briefs, this panel unanimously agrees that oral argument is not needed. Fed.R.App.P. 34(a). Rule 9(b)(3), Rules of the Sixth Circuit. For the following reasons, appellant's conviction is affirmed.
 
 I.
 
 2
 On April 4, 1986, the First Federal Savings and Loan in Memphis, Tennessee was robbed. The robber, a black male, was dressed in a brown shirt, pants and hat, which resembled a United Parcel Service uniform. The robber carried a cardboard box and a clipboard and approached teller Patricia Walkup. Ms. Walkup testified that under a cover sheet on the clipboard was a holdup note. In the note, the robber threatened that someone would be harmed if he wasn't given $35,000. She testified that the robber held a gun in his hand. Ms. Walkup placed money and a cash drawer in the box. An exploding dye pack was surreptiously included with the money. The robber left the bank with the box, but left the clipboard with the holdup note on the counter. The box and money were later found near the bank covered with red dye from the dye pack.
 
 
 3
 On April 18, 1986, another bank was robbed in Conway, Arkansas by a black man wearing a black leather jacket. Later that day, appellant and his brother were stopped in the Little Rock area while driving a rented car which matched the description of the getaway car in the Conway robbery. Appellant and his brother were arrested when evidence of the robbery was discovered in the car. The car was impounded.
 
 
 4
 Later that day, an FBI agent executed a search warrant authorizing the seizure of the "black leather jacket, evidence relevant to planning and execution of the robbery of the FIRST STATE BANK AND TRUST COMPANY OF CONWAY." The agent found a black leather jacket in the back seat of the car, and proceeded to search the trunk, where he saw several articles of clothing including a brown jacket, pants and cap. Attaching no significance to these items, the agent did not seize them, but merely photographed them. The items were later released to appellant's attorney. When the FBI discovered that other bank robberies were committed by a person wearing a brown uniform, they obtained a federal grand jury subpoena for the items and obtained them from appellant's attorney.
 
 
 5
 Appellant was convicted of the Conway, Arkansas bank robbery.
 
 
 6
 On July 17, 1986, the investigating FBI agent was told that appellant's fingerprints were found on the note, which was written on the back of a movie schedule from a Red Roof Inn, and the cover sheet, which was a Sears Financial Network advertisement.
 
 
 7
 In October of 1987, appellant was tried in Alabama on seven counts of bank robbery. At this trial, Patricia Walkup testified concerning the Memphis robbery and stated that appellant looked like the man who robbed her in Memphis on April 4, 1986. Appellant was convicted on six of the seven counts on October 9, 1987.
 
 
 8
 On November 12, 1987, the federal grand jury for the Western District of Tennessee indicted appellant for the offense of bank robbery in violation of 18 U.S.C. Sec. 2113(a) and the offense of armed bank robbery in violation of 18 U.S.C. Sec. 2112(d). Appellant subsequently filed the following pretrial motions which are relevant to this appeal: motions to suppress the identification testimony of Patricia Walkup and the introduction of the brown jacket, cap and pants discovered in the search of the rental car in Arkansas, a motion to dismiss the indictment for pre-indictment delay, and a motion for the payment of expenses for the use of a fingerprint expert. These motions were referred to a magistrate who recommended that the motions to suppress evidence and to dismiss the indictment be denied. Appellant filed timely objections to the magistrate's report and recommendation. After considering the report and appellant's objections, the district court adopted the recommendation and denied these motions. The motion for payment of the expenses of a fingerprint expert was conditionally granted by the magistrate and the district court. Since appellant did not meet the conditions set forth by the court, however, no expenses were paid and no expert assisted appellant in his defense.
 
 
 9
 A jury trial began on June 13, 1988. On June 19, 1988, the jury found appellant guilty of armed bank robbery. Appellant was given a twenty-five year sentence. He timely appeals.
 
 
 10
 On appeal, appellant challenges the district court's rulings on these motions and also argues that there was insufficient evidence to convict him of armed bank robbery.
 
 II.
 A.
 
 11
 Appellant argues that the district court erred in allowing into evidence the identification testimony of Ms. Walkup. He argues that he was denied due process because the identification resulted from an impermissibly suggestive "show-up" and that based on the factors set forth in Neil v. Biggers, 409 U.S. 188, 199-200 (1972), it was unreliable. Appellant relies on the length of time between the robbery and the identification, inconsistencies between Ms. Walkup's description of the robber and his actual appearance, and the assertion that his physical appearance had changed from the time of the robbery until the identification at the Alabama trial.
 
 
 12
 This court recently discussed the standards to be applied in judging challenged identification testimony. In United States v. Causey, 834 F.2d 1277 (6th Cir.1987), cert. denied, 108 S.Ct. 2019 (1988), we noted that the essential question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. Id. at 1284-85. We went on to restate that " '[a] defendant is denied due process only when the identification evidence is so unreliable that its introduction renders a trial unfair. As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given the identification.' " Id. at 1285 (quoting Smith v. Perini, 723 F.2d 478, 482 (6th Cir.1983), cert. denied, 466 U.S. 941 (1984)).
 
 
 13
 After reviewing appellant's arguments, the magistrate determined that the questions raised by appellant may affect the weight given to Ms. Walkup's identification testimony, but they were not serious enough to preclude the identification testimony altogether. Upon review of the evidence presented below, we conclude that circumstances surrounding the identification of appellant at the Alabama trial did not give rise to a substantial likelihood of misidentification and that the magistrate correctly decided that the questions concerning Ms. Walkup's testimony go to the weight of the testimony and not its admissibility. Accordingly, the district court did not err in denying appellant's motion to suppress this testimony.
 
 B.
 
 14
 Appellant argues next that the district court erred in denying his motion to suppress the brown clothing found in the trunk of the rental car in Arkansas. He argues that the search of the trunk after the leather jacket was found in the back seat violated the fourth amendment and that the fruits of this search should not be admitted into evidence.
 
 
 15
 In recommending denial of the motion, the magistrate determined that appellant did not have standing to challenge the search and that the search of the trunk was authorized by the search warrant. In reaching this latter conclusion, the magistrate made the following observations: "The warrant authorized a search of the entire vehicle. The fact that [the FBI agent] found the black leather jacket in the back seat before he opened the trunk does not mean that he was not authorized to search the trunk as well. In fact, the statement in the search warrant relied on by Mr. Rodgers is subject to the interpretation that there was in the vehicle a black leather jacket as well as 'evidence relevant to planning and execution of the robbery of First State Bank and Trust Company of Conway,....' "
 
 
 16
 Assuming arguendo that appellant has standing to challenge the search, we agree with the magistrate's conclusion, that given the language of the warrant, the FBI agent was authorized to continue his search for "evidence relevant to planning and execution of the robbery" after he found the leather jacket, and, therefore, the discovery of the brown clothing in the trunk was not based on an unconstitutional search.
 
 
 17
 Accordingly, we agree with the district court's decision to deny appellant's motion to suppress the introduction of the clothing found in the trunk of the car.
 
 C.
 
 18
 Appellant argues next that the district court erred in denying his motion to dismiss the indictment due to pre-indictment delay.
 
 
 19
 Dismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage. United States v. Greene, 737 F.2d 572, 574 (6th Cir.1984).
 
 
 20
 Appellant attempts to satisfy the two prongs of this test by arguing that the government's case against him rested on the identification testimony of Ms. Walkup and that the government gained an advantage by purposely delaying his indictment so that appellant would be "forced to change his appearance in prison through Governmental manipulation", which would bring his appearance more in line with Ms. Walkup's description of the bank robber. The government asserts that it waited to indict appellant for the Tennessee robbery in the hope that he would plead guilty to this single count after the seven count Alabama trial.
 
 
 21
 In ruling on this motion, the magistrate made the following observations concerning these arguments: "[The government's reasons] are legitimate reasons for the delay and do not indicate any nefarious plot to gain an advantage over the defendant. Further, the likelihood of the government going to the elaborate trouble that Mr. Rodger suggest they went to to get his hair shortened is remote, at best, given six of defendant's fingerprints on the holdup note."
 
 
 22
 Given the evidence presented at appellant's trial and the incredible nature of his allegations we agree with the magistrate's conclusions and believe that the district court properly denied the motion to dismiss the indictment.
 
 D.
 
 23
 Appellant argues that he was denied due process by the district court's handling of his request for payment of the expenses of a fingerprint expert.
 
 
 24
 On February 10, 1988, the magistrate entered an order that stated that appellant should find a fingerprint expert, ascertain the probable costs of his services, and the magistrate would then authorize any appropriate payment. Appellant sought from the government the photographs of the fingerprints so that he could present them to an expert. The government, fearing that appellant would alter the photographs before they reached the expert, balked at this request. To resolve this conflict, the magistrate held the photographs for presentation to an expert should appellant retain one. On June 7, 1988, the district court ordered the magistrate to deliver the photographs in his possession to appellant. On June 9, appellant gave the magistrate an estimate of the cost of the expenses of a fingerprint expert retained by his family. In an order filed June 9, 1988, the Thursday before the Monday trial date, the district court noted that appellant did not make any showing that this expert had reviewed the fingerprints or that he could present any useful testimony. The court made the following ruling.
 
 
 25
 The defendant's request that the court order the expenditure of a substantial amount of government money to hire a fingerprint expert whose services and testimony are not clear comes too late. The defendant has had ample opportunity to make arrangements for an expert to analyze the prints in this case and has not availed himself of that opportunity. Defendant's request for payment of $1,250.00 to [the expert] will, at this time, be denied.
 
 
 26
 Nevertheless, the court will, upon request of Mr. Rodger, authorize an expenditure of funds to send the fingerprints in this case by overnight mail to [the expert] for his analysis and will authorize funds for that initial analysis. If it can then be shown that [the expert] will have some useful testimony to offer, the court will consider a further order for funds for him to be brought here to testify.
 
 
 27
 Like the other opportunities, which appellant was afforded in the four months prior to trial, he did not avail himself of the opportunity presented in the June 9th order. Upon review of the court's rulings concerning the fingerprint expert, we conclude that the appellant was not denied due process.
 
 E.
 
 28
 Finally, appellant argues that there was insufficient evidence to convict him of armed robbery.
 
 
 29
 A jury verdict must stand if there is substantial evidence, taking the view most favorable to the government to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). On review of the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 30
 The government presented the following evidence in support of its case. The brown jacket, pants and cap found in appellant's rented car, the fact that appellant's fingerprints were found on the holdup note, which was written on the back of a Red Roof Inn movie schedule, a bill from the Red Roof Inn, which indicated that appellant had stayed there at the time of the robbery, and Ms. Walkup's identification testimony and her testimony that appellant displayed a gun during the course of the robbery. Appellant, construing the evidence in a light most favorable to himself, argues that it does not support his conviction.
 
 
 31
 Viewing this evidence in a light most favorable to the government, we conclude that there was sufficient evidence to support appellant's conviction for armed robbery.
 
 
 32
 For the foregoing reasons, appellant's conviction is AFFIRMED.