**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Reginald RICE, (01–6600) Joma Damani Matthews, (01–6601) Defendants–Appellants.**

Nos. 01–6600, 01–6601.

United States Court of Appeals,
Sixth Circuit.

June 2, 2003.

---

Before SUHRHEINRICH and COLE, Circuit Judges; and CARR,* District Judge.

SUHRHEINRICH, Circuit Judge.

Defendants Reginald Rice and Joma Damani Matthews were convicted of distribution of a quantity of cocaine base (crack) and aiding and abetting in the distribution of cocaine. They raise several challenges to their convictions. Rice also appeals his sentence as a career offender.

## I.

Defendants' convictions are based on several controlled buys set up by the 1st Judicial District Drug Task Force and the Federal Bureau of Investigation ("FBI"). On March 17, 2000, agents of the Task Force and the FBI gave confidential infor-mant Charles Barnette money to purchase two grams of crack cocaine from defendant Matthews. Barnette traveled to apartment 212 on Highland Avenue in Johnson City, Tennessee, where he met with Matthews, also known as "Nature" or "Keith." Matthews agreed to sell Barnette two grams of crack cocaine. Matthews gave Barnette two small plastic bags, each containing a rock of crack cocaine, in exchange for the $200. The agents who had surveilled the apartment, met Barnette to take custody of the crack cocaine. The transaction was also recorded.

On March 23, 2000, Barnette met again with Matthews at 212 Highland Avenue. In a recorded transaction, Barnette purchased four rocks of crack cocaine from Matthews for $400. Barnette turned the crack cocaine over to the agents after he left the apartment.

On May 31, 2000, at approximately 8:30 p.m., Barnette returned to 212 Highland Avenue. Matthews introduced Barnette to "Reds," or defendant Rice. Barnette told Matthews and Rice that he wanted to buy crack cocaine. Barnette indicated that he wanted to buy an ounce of crack cocaine, but Matthews stated that he could not produce that much. Matthews took Barnette into a bedroom. Rice followed. In the bedroom, Matthews retrieved a bag containing little baggies of crack cocaine from the dresser. Barnette stated again that he wanted to buy an ounce of crack cocaine. At this point, Matthews asked Rice to produce what he had, and Barnette picked the rocks he wanted from Rice's supply. Barnette paid Matthews $200 for the crack cocaine and told Rice and Matthews that if they could get more he would like to come back. Matthews told him to

* The Honorable James G. Carr United States District Judge for the Northern District of Ohio, sitting by designation.

come back later that evening. This transaction was recorded.

Barnette went back to the apartment around 9:30 p.m. This time, Rice produced six bags of crack cocaine, each containing one rock, and sold them to Barnette. Matthews was present during the transaction. This transaction was also recorded.

At trial, Barnette identified Rice as the person who sold him the six rocks of crack cocaine.

On September 22, 2000, Barnette helped officers arrest Matthews by locating him. Following Matthews' arrest, agents took a digital photograph of Matthews and showed it to Barnette. Barnette confirmed that the person in the photograph was Matthews. Barnette also testified that he had not been shown any other photographs of either defendant prior to trial.

Agent Matt Thompson testified that he assisted in Matthews' arrest on September 22, 2000. Thompson had never seen Matthews, but relied on the information of Matthews' location provided by Barnette. Thompson took the digital photograph of Matthews and carried the camera to Barnette's location. Barnette confirmed to Thompson that the person was Matthews.

Agent Carl Walker was one of the case agents on the evening of May 31, 2000. Walker processed the crack cocaine for submission to the crime laboratory. He placed the two packages of crack cocaine from both transactions into a single package. On each packet Walker noted "first deal" for the 8:30 p.m. purchase and "second deal" on the 9:30 p.m. The packages were admitted at trial Exhibits 7 and 8, respectively.

Forensic scientist Celeste White analyzed the crack cocaine from the May 31, 2000 exhibits. She testified that she analyzed the packages individually, but that the 4.0 grams of cocaine base reflected in her laboratory report was the sum of the two packages. She also stated that her notes reflected that one packet weighed 2.04 grams and the other packet weighed 2.02 grams, but that she did not know which was which.

Defendant Matthews testified. He admitted that he sold crack cocaine to the confidential informant on three of the four occasions alleged in the indictment. He also testified that the crack cocaine distributed in the "second deal" was distributed by his friend "Reds," who was not Rice. Matthews stated that he first saw Rice at their initial appearance in federal court.

Prior to trial, the Government had notified Defendants that it intended to use Rule 404(b) evidence at trial. Based on Matthews' testimony, the Government introduced, over objection, that evidence to establish Rice's identity. Specifically, Barnette testified in rebuttal that on May 21, 2000, he went to Matthews' apartment to purchase cocaine, and that Rice was in the apartment. Barnette claimed that Rice told him Matthews was away, but would be back over the weekend. Rice also allegedly refused to sell Barnette any drugs since he did not know him, and told Barnette that he would have to talk to Matthews about it.

FBI Special Agent Rainer Drolshagen testified in rebuttal that he had arrested Rice and fingerprinted him prior to his initial appearance on the indictment. Drolshagen stated that while Rice was being processed, Drolshagen asked him if he knew Matthews, who was across the room in a holding cell. Rice responded that he knew Matthews prior to the arrest.

The indictment charged Matthews with three counts of distribution of a quantity of cocaine base (crack); Count 1 for the March 17, 2000 transaction, Count 2 for

the May 23, 2000 transaction, and Count 3 for the May 31, 2000 transactions. Count 4 charged both Matthews and Rice with aiding and abetting each other in the distribution of a quantity of crack cocaine on May 31, 2000. Defendants were convicted by a jury on all counts.

Defendants were sentenced on December 3, 2001, and judgments were entered on December 12, 2001. Rice was sentenced as a career offender. Although his criminal history points totaled 12, he was placed in criminal history category VI, based on two prior felony convictions. In the first, Rice was convicted at the age of sixteen for forcibly sodomizing another resident at the facility where he was being detained. He was sentenced as an adult on December 8, 1983. The second offense involved a conviction for heroin distribution. Rice was sentenced for this crime on February 3, 1997.

## II.

### A.

Rice alleges that the evidence was not sufficient to support the verdict against him. When reviewing challenges to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Barnette testified that Rice was present at the 212 Highland Avenue on May 31, 2000, at both 8:30 p.m. and 9:30 p.m. Barnette stated that during the 9:30 p.m. transaction, Rice sold him crack cocaine. Barnette indicated that he gave the crack cocaine to Agent Walker. Walker testified that he labeled it "second deal." White testified that she performed the analysis

on the two bags and that both contained crack cocaine. Thus, the jury had before it evidence that Rice was present in the apartment on May 31, 2000, that he sold Barnette a quantity of crack cocaine, that the crack from this transaction was marked as the "second deal" by Agent Walker, that the package was forwarded to the crime laboratory analysis, and that it contained a specified amount of crack cocaine.

■ Rice alleges that the evidence is insufficient to convict him on Count 4 because Celeste White, who performed the analysis on the substances taken on May 31, 2000, did not keep a record of which bag was attributable to the 8:30 transaction or the 9:30 transaction. Rice contends that the jury was required to determine both the weight of the drugs involved in Count 4 as well as the identity of the specific lots of drugs. This argument is without merit. Under 21 U.S.C. § 841(b)(1)(C), distribution of any quantity of crack cocaine violates 21 U.S.C. § 841(a)(1). *See* 21 U.S.C. 841(b)(1)(C). Drug quantity only becomes an element of the offense that must be submitted to the jury when the drug amount calculation increases the statutory maximum. *See Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *United States v. Leachman,* 309 F.3d 377 (6th Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1769, 155 L.Ed.2d 527 (2003).

### B.

Matthews argues that the district court erred in admitting Exhibits 7 and 8 on the grounds that the Government failed to prove the chain of custody of the crack cocaine charged in Counts 3 and 4 of the indictment. We review challenges to chain of custody for abuse of discretion. *United States v. Levy,* 904 F.2d 1026, 1030 (6th Cir.1990).

Matthews alleges that the chemist could not determine whether Exhibit 7 went with Count 3 or 4, and could not determine whether Exhibit 8 went with Count 3 or 4. Matthews maintains that such deficiency "diminished the government's requirement to prove the chain of custody of the crack cocaine where multiple substantive counts were charged." App.'s Br. at 16.

This argument must be rejected. The evidence established that Barnette, under the direction of the agents, went to 212 Highland Avenue on May 31, 2000. Barnette testified that he purchased crack cocaine from Matthews at 8:30 p.m., left the apartment, met with Agent Walker and turned the crack cocaine over to him. Barnette further testified that he went back to the apartment at 9:30 p.m., bought an additional amount of crack cocaine from Rice, left the apartment, and gave the crack cocaine to Agent Walker. Agent Walker testified that he packaged and marked the bags he received from Barnett, and then put the packages in the evidence locker located inside a locked facility at the Johnson City Police Department. Officer Ray Hooks, Assistant Evidence Custodian for the Johnson City Police Department, testified that he transported and retrieved Exhibit 8 from the Tennessee Bureau Crime laboratory, and that the Evidence Custodian transported and retrieved Exhibit 8. Lastly, Celeste White testified that she conducted chemical analysis on Exhibits 7 and 8 and that both bags contained nearly identical weight of crack cocaine. In short, there is no "chain of custody" problem here.

Rather, Matthews' real complaint is that White failed to record the precise weight of each bag. However, given the fact that the amounts were virtually identical, any omission is clearly harmless under Fed. R.Crim.P. 32. In any event, this chal-lenges goes to the weight of the evidence rather than its admissibility. *Levy,* 904 F.2d at 1030. The district court did not abuse its discretion in admitting Exhibits 7 and 8.

### C.

Next, Matthews asserts that the photo identification procedure used in this case was so impermissibly suggestive that it denied Matthews a fair trial. Matthews complains that the procedure by which Barnette was shown the digital photograph by Thompson shortly after Matthews' arrest was impermissibly suggestive because Barnette "obviously expected" to be shown a picture of the person he believed to be Matthews. Matthews also objects to the next identification of him nearly one year later, at trial. Matthews maintains that Barnette "naturally expected" Matthews to be seated at the defense table. Finally, because Barnette was the only prosecution witness who had seen Matthews, his in-court identification was critical to the Government's case.

A defendant is deprived of his constitutional right of due process if the method of identification was so "unnecessarily suggestive" that there is a substantial likelihood of misidentification. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Ledbetter v. Edwards,* 35 F.3d 1062, 1070–71 (6th Cir.1994); *Smith v. Perini,* 723 F.2d 478, 481–82 (6th Cir. 1983).

Barnette testified that he met and negotiated with Matthews to buy crack cocaine on four separate occasions beginning on March 17, 2000 and concluding on May 31, 2000. Barnette testified that, four months later, on September 22, 2000, he located Matthews for officers, who then arrested Matthews. He also testified that Thompson showed him the digital photograph. Thompson, in turn, testified that he took

the digital photograph and showed it to Matthews. Thompson also testified that he did not show Barnette a photo line up.

■ The record does not disclose a substantial likelihood of misidentification. As the testimony demonstrated, Barnette had met with Matthews on four separate occasions prior to Matthews' arrest and before Thompson showed him the digital photograph of Matthews. We conclude that the photograph did not trigger Barnette's identification of Matthews. Thus, the district court did not abuse its discretion in permitting Barnette's testimony.

### D.

Defendants argue that the district court erred when it allowed the Government to introduce Rule 404(b) evidence via Barnette's rebuttal testimony that Rice was at Matthews' apartment on May 21, 2000, and that Rice refused to sell crack cocaine to Barnette until he talked to "Keith." We review the district court's ruling regarding he admission of Rule 404(b) testimony for abuse of discretion. *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir.2002).

Barnette's testimony was offered to rebut Matthews' testimony that he did not know Rice, and was therefore offered for the admissible purpose of establishing Rice's identity. The evidence was certainly probative to establish Rice's identity and his relationship to Matthews, and to rebut Matthews' testimony. The district court did not abuse its discretion in admitting the evidence.

### E.

Rice objects to being sentenced as a career offender under U.S.S.G. § 4B1.1. He contends that one of his two prior felony convictions cannot be counted because it was committed when he was under eighteen, resulted in a sentence of less than sixty days, and did not occur within five years of the commencement of the instant offense, citing U.S.S.G. §§ 4A1.2(d)(2)(A), and 4A1.2(e)(4).

In addition to the instant drug offense, which was commenced for sentencing purposes on May 31, 2000, *see* U.S.S.G. § 1B1.3 (J.A.214; PSR ¶ 30), Rice was convicted of attempted sodomy on December 8, 1983, at the age of sixteen, sentenced to 18 months to 4 years in prison and paroled on October 30, 1985. That case was discharged on March 26, 1990. Rice was also convicted in the United States District Court for the Northern district of New York at Albany of conspiring to distribute heroin. On February 3, 1997, he was sentenced to time served (503) days, and placed on three years supervised release.

To be sentenced as a career offender under the Sentencing Guidelines, (1) a defendant must be at least eighteen years old at the time of the instant offense, (2) the instant offense must be a crime of violence or a controlled substance offense, and (3) the defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. Rice's argument implicates the third element. A "prior felony conviction" is defined in the application note as

a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. *A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction*

*for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).*

U.S.S.G. § 4B1.2, comment. (n. 1) (emphasis added). The career offender provision further provides that the provisions of § 4A1.2, "Definitions and Instructions for Computing Criminal History" apply to the counting of convictions to determine career offender status under § 4B1.1. U.S.S.G. § 4B1.2, comment. (n. 4). Thus, in order to be counted, Rice's attempted sodomy conviction must be both an adult conviction under the relevant state law, and satisfy the conditions of § 4A1.2.

Section 4A1.2 provides in relevant part:

(d) *Offenses Committed Prior to Age Eighteen*

(1) If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A.1(a) for each such sentence.

(2) *In any other case,*

(A) add 2 points under § 4A1.1(b) for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense; . . .

U.S.S.G. § 4A1.2(d) (Nov.2000) (emphasis added).

█ Here, the sentencing report indicates that Rice was convicted as an adult under the laws of New York. (J.A. 215). Rice does not object to this characterization. The attempted sodomy conviction also satisfies § 4A1.2(d)(1), because the sentence imposed exceeded one year and one month. Under the plain language of § 4A1.2(d), Rice's conviction is counted under § 4A1.2(d)(1), and we do not look to

§ 4A1.2(d)(2). It therefore does not matter that Rice was not released from confinement within five years of the instant offense.

*United States v. Hinds,* 2 Fed.Appx. 420, 423 (6th Cir.2001) (per curiam) does not alter this analysis. *Hinds* states in relevant part that:

Pursuant to the Guidelines, any "offense[ ] committed prior to age eighteen . . . result[ing] in [the] imposition of an adult or juvenile sentence or [a] release from confinement on that sentence within five years of the defendant's commencement of the instant offense [is] counted." U.S.S.G. § 4A1.2, cmt. n. 7 (1998).

The full text from which this quote derives comes from an application note to the guideline itself. That application note provides in full as follows:

*Offenses Committed Prior to Age Eighteen.* Section 4A1.2(d) covers offenses committed prior to age eighteen. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted. To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a "juvenile," this provision applies to all offenses committed prior to age eighteen.

U.S.S.G. § 4A1.2, comment. (n.7) (Nov. 2000). When read in full, it is clear that the application note gives an overall description of which offenses committed pri-

or to age eighteen will be considered under the guideline section § 4A1.2(d). How they are to be treated is the subject of the actual guideline section. And, the guideline itself is not ambiguous on the subject.

Although Rice's sentence was *not* "imposed within fifteen years of the defendant's commencement of the instant offense," *see* U.S.S.G. § 4A1.2(e)(1), having been imposed on December 8, 1983, it is still counted because it did result in Rice's "being incarcerated during any part of such fifteen-year period." *See* U.S.S.G. § 4A1.2(e)(1) (stating to "[a]lso count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period"); *United States v. Robertson,* 260 F.3d 500, 509 (6th Cir.2001) (stating that "to be considered a career offender under § 4B1.1, Robertson must have been convicted of, or have been imprisoned on, at least one additional felony constituting a 'crime of violence' or a 'controlled substance offense' within fifteen years of the date of the current offense"). Rice was not paroled until October 30, 1985, which is within fifteen years' of the instant offense. Thus, § 4A1.2(e)(1), and not (e)(2), applies.

It is irrelevant that the federal district court in New York did not count the 1983 attempted sodomy conviction. In sum, given two prior felony convictions, one for a crime of violence and the other for a controlled substance offense, the district court in this case correctly sentenced Rice as a career offender under § 4B1.1.

### III.

The judgments of the district court are AFFIRMED.