JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Stephen Hines appeals from his conviction following a jury trial on charges of drug trafficking, possession of drugs, and possession of criminal tools. Defendant advances nine assignments of error challenging various rulings by the trial court, the prosecution's conduct, and the jury's verdicts. For the reasons that follow, we affirm.
 {¶ 2} On April 9, 2003, law enforcement officers began conducting surveillance of a suspected drug dealer at a hotel in Orange, Ohio. Officers observed several people coming and going from the hotel room under investigation, who were using a blue Caravan. On April 10, 2003, a tan Toyota Camry, later identified as defendant's car, was seen entering the hotel parking lot around 1:00 a.m., and its occupants eventually got into the blue Caravan and drove off. Officers observed Reynold's plastic wrap boxes on the back seat of the Camry. The Camry was again observed at the hotel later that evening. Defendant was identified as the driver of the Camry. Officers followed the Camry to 5541 Grasmere Road in Maple Heights, then to East 36th and Albay in Cleveland, and back to the address on Grasmere.
 {¶ 3} Officers observed one of the male occupants of the Camry take a garbage bag towards the curb and then the Camry departed. The officers retrieved the garbage bag, which contained, among other things, ziplock bags and residue of marijuana.
 {¶ 4} On April 11, 2003, the Camry was again observed at the hotel under surveillance. A passenger of the Camry went inside the hotel and returned carrying three or four small bags and placed them inside the Camry. The Camry with two occupants was followed to 5541 Grasmere. The passenger got out and leaned into the back seat and both occupants entered the house. The Camry left with only one occupant.
 {¶ 5} Monica James, aka Monica Mason rented the house at 5541 Grasmere and listed Anthony Mason as a co-tenant. Defendant did not claim to reside at that location.
 {¶ 6} Officers articulated their observations in an affidavit for a search warrant, specifically identifying the Toyota Camry and defendant. Police obtained a search warrant for 5541 Grasmere and executed the search on April 14, 2003. The warrant authorized the search of 5541 Grasmere, any vehicles on the premises, and all persons therein. Marijuana was found on the premises in a duffle bag (11,046.6 grams), in the kitchen sink (1.09 grams), in a black plastic bag (8,851 grams), on the kitchen table (13.60 grams), and in the living room (149.48 grams). The marijuana, drug paraphernalia, and defendant's car were seized and defendant and others were arrested on the scene.
 {¶ 7} Co-defendant Mason testified on behalf of the State as part of a plea bargain, which reduced the charges against him. According to the record, Mason's plea agreement depended on him telling the truth. Prior to trial, Mason told numerous lies and committed perjury in an effort to have his case transferred to juvenile court. It was established that Mason is Jamaican and entered the country legally with a passport. He lived in New York and came to Cleveland where he obtained false identification. His alleged aunt, Monica James, gave him two keys to 5541 Grasmere where he stayed periodically. Mason met defendant through his aunt. Mason claims defendant would have him check on marijuana that was being stored at 5541 Grasmere in a duffle bag in the basement.
 {¶ 8} Mason said he helped defendant and Roy "take down" the marijuana prior to being arrested on April 14, 2003. This meant breaking the marijuana down from condensed bricks to one-pound packages. Mason described his role and the process. He explained that he threw the "shakes" in the garbage. Defendant gave Mason a half pound of marijuana for his help.
 {¶ 9} Mason also described his activities in the days leading up to April 14, 2003. He testified that defendant picked him up in the Camry and picked up Roy at the hotel. The group went to a club in Roy's Caravan. Mason also gave another man, identified as co-defendant Grant, a key to 5541 Grasmere and later confirmed the key from property seized from Grant by the police.
 {¶ 10} On cross-examination, defense counsel attempted to question Mason about possible juvenile rape charges made against Mason in New York. The court sustained the State's objection. There is no proffer of this testimony in the record nor any document reflecting such a conviction.
 {¶ 11} The trial court denied certain of defendant's motions that are relevant in this appeal: his motion to dismiss for lack of speedy trial; his motion to suppress evidence; his motion for mistrial or for severance; and his motion for acquittal.
 {¶ 12} Defendant was tried with two other co-defendants. The trial court granted co-defendant Richard's motion for acquittal. The jury found defendant guilty on all three counts but found codefendant Grant not guilty. Defendant was sentenced and commenced his appeal.
 {¶ 13} We will address defendant's assignments of error together and out of order where appropriate for discussion.
 {¶ 14} "I. The defendant was denied a speedy trial when, despite the defendant's `Motion to Advance' and `Written Objections' to any delays, the case was, nonetheless, continued to (and actually commenced on) a date that was beyond the time parameters set forth in R.C. § 2945.71 et. seq."
 {¶ 15} R.C. 2945.71(C) (2) requires the State to bring the accused to trial within 270 days after his arrest. "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). R.C. 2945.72 delineates various grounds for extending the statutory time limits. Specifically, R.C. 2945.72(E) and (H) permit extension of the time for the following:
 {¶ 16} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 17} "* * *
 {¶ 18} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;"
 {¶ 19} Defendant was arrested on April 14, 2003 and his trial commenced on July 22, 2003; a 99-day period. Defendant does not dispute that the speedy trial time was tolled during the pendency of his motion to suppress between May 19, 2003 and June 3, 2003. Pursuant to R.C. 2945.72(E), the speedy trial time was at least extended by this period. Accordingly, the State brought defendant to trial within the statutory time limit.
 {¶ 20} Assignment of Error I is overruled.
 {¶ 21} "II. The court erred in ruling the defendant lacked standing to move for the suppression of (and for the return of) the property seized ostensibly as evidence in the wake of: (1) the execution of `the' search warrant; (2) the defendant's simultaneous arrest; (3) the warrantless searches made of him and his vehicle; and (4) the actual seizure of the vehicle and its contents."
 {¶ 22} Defendant denied any interest in the contraband seized from 5541 Grasmere. Defendant's automobile, which was observed during the undercover surveillance, identified in the affidavit for search warrant, and found at 5541 Grasmere, was seized during execution of the search warrant. The State charged defendant with possessing criminal tools, including "automobiles and/or cellular phones," etc.
 {¶ 23} The trial court found that defendant lacked standing to challenge the search of 5541 Grasmere and denied his motion to suppress with regard to the search and seizure of his automobile. We find no error with the court's rulings.
 {¶ 24} Because defendant denied any interest in the residence and/or the evidence seized therefrom he did not have standing to challenge the search of the residence. United States v.Salvucci (1980), 448 U.S. 83; Rakas v. Illinois (1978),439 U.S. 128; State v. Coleman (1989), 45 Ohio St.3d 298.
 {¶ 25} The trial court found that probable cause existed to support the search warrant, which encompassed the search and seizure of defendant's car that was found on the premises. "In determining whether to issue a search warrant, the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. Gates (1983),462 U.S. 213. And the duty of a reviewing court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed. Id." State v. Montgomery (Sept. 17, 1987), Cuyahoga App. No. 52575.
 {¶ 26} The affidavit for search warrant, inter alia, detailed the officers' repeated observations of: defendant's vehicle between the hotel under surveillance and 5541 Grasmere; one of the occupants of defendant's vehicle taking out garbage at 5541 Grasmere, which contained plastic bags and marijuana residue; and other factors suggesting a fair probability that defendant and others utilized the Camry to faciliate drug trafficking. Defendant and his vehicle were specifically identified in the affidavit. When the officers executed the search warrant both defendant and his vehicle were on the premises of 5541 Grasmere and subject to search under the warrant. We do not find that the trial court erred when it concluded that there was probable cause to support the search warrant and the ensuing search and seizure of defendant's vehicle.
 {¶ 27} Assignment of Error II is without merit and is therefore overruled.
 {¶ 28} "III. The defendant was denied a fair trial and due process when the court unduly restricted the defense cross-examination of the State's chief witness, Anthony Mason — an admitted perjurer, whose accusatory testimony was the sole consideration provided by him in exchange for his bargained sentence."
 {¶ 29} Defense counsel began to cross-examine Mason about his knowledge of a girl and whether Mason went to court in New York. The State objected. After an off-the-record side bar, the court sustained the objection. It is unclear from the record what exactly the defense sought to impeach Mason with in this regard. There is no proffer nor any documentary evidence of a criminal conviction or juvenile adjudication from New York in the record. In later proceedings, the court refers to "this New York incident" and defense counsel's inability to produce "any further evidence before he would proceed to continue his questioning 
regarding the alleged rape incident by Anthony Mason * * * no further information or evidence of the New York rape was presented to the court." (Tr. 1845).
 {¶ 30} It is not established whether the excluded line of questioning related to a criminal conviction, juvenile adjudication, or just criminal allegations. The State argues that neither Evid.R. 609(D) nor R.C. 2151.358(H) allow impeachment with mere allegations. A juvenile adjudication cannot be used to impeach a witness' general credibility under Evid.R. 609 but may be admissible where it exposes possible bias of the witness.State v. White (1982), 6 Ohio App.3d 1, 3, citing State v.Cox (1975), 42 Ohio St.2d 200, at 204; see, also, Davis v.Alaska (1974), 415 U.S. 308. Defendant did not claim to be using the excluded line of questioning to establish bias of the witness but was trying to attack his credibility in general. Therefore, absent a proffer of evidence to establish the nature of this information, we must overrule Assignment of Error III.
 {¶ 31} "IV. The prosecutor was guilty of misconduct when, in the wake of certain impermissibly asked questions put to the witness Anthony Mason, she literally resolved or transformed herself into an unsworn witness for the State.
 {¶ 32} "VII. The appellant was denied due process when counsel for the State, in the wake of her awareness that the State's chief witness's credibility had been seriously damaged, proceeded to vouch for the witness's credibility during her summations.
 {¶ 33} "VIII. The court erred when it openly and notoriously actually endorsed the State's argument that: the court would determine whether the witness, Anthony Mason, was telling the truth in his testimony and that he was telling the truth."
 {¶ 34} All of these assignments of error focus on whether the State improperly vouched for Mason. Vouching is an indication by the prosecutor of a personal belief in the witness' credibility.United States v. Causey (C.A.6, 1987) 834 F.2d 1277, 1283. A prosecutor may not state his/her own belief as to whether a witness is telling the truth because to do so would invade the jury's responsibility to determine the weight to be given to a witness' testimony. State v. Smith (1984), 14 Ohio St.3d 13,14; State v. Carpenter (1996), 116 Ohio App.3d 615, 622. However, a prosecutor may argue that certain evidence tends to make a witness more or less credible. Id.
 {¶ 35} Defendant first takes exception with the State's questions on re-direct of Mason about his understanding of his plea agreement. Mason admitted on cross-examination that his lawyer told him "no deal unless [he] implicated [the co-defendants]." On re-direct, the prosecutor questioned Mason about the inference created by defendant on cross-examination that Mason's deal depended upon him implicating all of his co-defendants regardless of the truth. Mason admitted that the State could still charge him relative to the perjury he had committed and that the State only told him to tell the truth. There is no prejudicial error where the State replies to statements made in the course of an argument by defense counsel, which are of such a nature as to require an answer. State v.Lott (1990), 51 Ohio St.3d 160, 166; State v. Watson (1969),20 Ohio App.2d 115, 125. We do not find that the prosecutor engaged in any misconduct or improper vouching in that portion of Mason's re-direct examination.
 {¶ 36} Next, defendant challenges certain comments made by the prosecutor during her closing arguments. The prosecutor is entitled to a certain degree of latitude in summation and may draw reasonable inferences from the evidence presented at trial and comment upon those inferences during closing statements.State v. Treesh (2001), 90 Ohio St.3d 460, 466. The test regarding prosecutorial misconduct in closing statements is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant.State v. Smith (1984), 14 Ohio St.3d 13, 14. A conviction will only be reversed on a claim of prosecutorial misconduct if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would not have found the defendant guilty.State v. Benge (1996), 75 Ohio St.3d 136.
 {¶ 37} Defendant contends that the prosecutor expressed her personal views about Mason's credibility to the jury during closing arguments and that the court "endorsed" them by overruling defendant's objections. Defendant cites to the following comments:
 {¶ 38} "Q: So this kid is telling these officers all this stuff, and its true.
 {¶ 39} "MR. WILLIS: Objection, you Honor.
 {¶ 40} "THE COURT: Rephrase.
 {¶ 41} "MS. NAIMEN: It's corroborated. The officers have independent information that all of this stuff is true. They've been surveilling the hotel since the afternoon of the 9th. They've been keeping an eyeball on Grasmere. And this kid is telling them a lot of information, truthfully —
 {¶ 42} "MR. WILLIS: Objection.
 {¶ 43} "MS. NAIMEN: — that they already know to be true and accurate.
 {¶ 44} "THE COURT: Go ahead.
 {¶ 45} "MS. NAIMEN: Thank you." (Tr. 1755-1756).
 {¶ 46} Defendant also refers to these additional comments by the prosecutor:
 {¶ 47} "* * * You heard what the agreement was, regardless of how it was misquoted by Mr. Willis.
 {¶ 48} "The agreement was this, he gets six years if he proffered truthfully and if he testified truthfully. The only person who decides whether or not he testifies truthfully regarding his own case is the gentlemen right there. Not me, not you, not him, nobody else. And it was clear, and it was made clear on the record during the plea, no matter what you all decide relative to those two men, this Judge independently determines whether or not he believes Mason was telling the truth. That's it." (Tr. 1761). The State prefaced these comments by instructing the jury to "listen — read again [the court's jury] instructions on how you [the jury should] assess Mr. Mason's testimony." Id.
 {¶ 49} Lastly, defendant refers to this excerpt of the prosecutor's closing argument:
 {¶ 50} "You've got to set aside the testimony from the defense attorneys from the cross-examination of the defense attorneys. And there is no promise from the State relative to charges against both him and his sister to all the shenanigans of last week. And only that man right there is going to make the decision as to whether or not Anthony Mason testified truthfully as it regards the agreement to [his] six-year sentence, period.
 {¶ 51} "And that is exactly what he told Mr. Willis on cross-examination. And if I recall correctly, what he told Mr. Willis, and Mr. Willis picked away at him at what the deal really was, and what was in his head as to [sic] opposed to what was recorded when the plea was took down, what he said, he slumped down, shaking his head, looking up at Mr. Willis over his eyebrows, talking about me, `She's going to do what she's going to do.'" (Tr. 1829-1830).[1]
 {¶ 52} The trial court instructed the jury about weighing the evidence and considering the credibility of witnesses in general. (Tr. 1713-1714). The jury was told, in part, "as a matter of law, you may believe a portion of the testimony of a particular witness, and disbelieve the rest of his or her testimony. You may believe all the testimony of a particular witness, or you may disbelieve all of the testimony of a particular witness." (Tr. 1714). The trial court instructed the jury to treat accomplice testimony with "grave suspicion" and require that it be weighed with "great caution."
 {¶ 53} "It is for you, as jurors, in light of the facts presented to you from the witness stand, to evaluate such testimony, and to determine its quality and worth, or its lack of quality and worth." (Tr. 1731). In addition, the trial court gave specific instructions to the jury about Mr. Mason's testimony as follows:
 {¶ 54} "You have heard evidence that the witness, Kamaric Salmon, AKA Anthony Mason, also known by other names, made statements on earlier occasions which counsel argues is inconsistent with the witness's trial testimony.
 {¶ 55} "Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.
 {¶ 56} "There has been evidence that the witness Salmon, AKA Mason, who testified at this trial, lied under oath at another proceeding. I must warn you that the testimony of this witness should be viewed cautiously, and weighed with great care. It is, however, for you to decide how much of his testimony, if any,you wish to believe." (Emphasis added). (Tr. 1732-1733).
 {¶ 57} We find no error with the prosecutor's statements pointing out the independent evidence that corroborated Mason's testimony. It is not improper for the prosecution to comment fairly on the credibility of witnesses based on their in-court testimony. State v. Carpenter (1996), 116 Ohio App.3d 615,
 {¶ 58} While the prosecutor's comments about Mason's plea agreement were inartful, they were technically accurate. It is true that the judge would ultimately decide whether Mason had fulfilled his side of the plea agreement with regard to his own case. This, however, had no impact on the jury's ability to find that Mason was or was not telling the truth for purposes of defendant's trial. The prosecutor's statements about the judge's ability to determine Mason's credibility were somewhat confusing and better left unsaid, but they do not merit reversal in this case. A jury is presumed to follow the instructions given to it by the trial judge. State v. Stallings (2000),89 Ohio St.3d 280, 286. We find that the trial court properly instructed the jury and made clear that the jury would decide what weight, if any, to give to Mason's testimony. Rather than endorse the alleged credibility of Mason, the trial court specifically cautioned the jury to weigh his testimony with grave suspicion and great care. The prosecutor also told the jury to rely on the instructions given to them by the trial court.
 {¶ 59} Accordingly, due to the limited nature of the prosecutor's comment and the trial court's instructions to the jury, we cannot find that defendant was denied a fair trial or that his substantial rights were prejudicially affected.
 {¶ 60} Assignments of Error IV, VII, and VIII are overruled.
 {¶ 61} "V. The court erred when it refused to declare amistrial in the wake of certain egregiously inappropriate and totally indefensible questions, counsel for a co-defendant, asked a police officer."
 {¶ 62} Defendant essentially alleges that counsel for the codefendants (Grant and Richard) conspired with the State and police in a "cleverly conceived effort" to impermissibly vouch for the credibility of Mason. Defendant contends that the trial court should have granted his motion for mistrial and for severance on this basis.
 {¶ 63} Defendant makes a sole and passing reference to the cross-examination of Det. Mendalero. Otherwise, defendant fails to cite or quote any portion of the record in support of this argument. Further, defendant has not provided any law to support his position. We find no evidence of the alleged conspiracy. We have reviewed the cross-examination of Mendalero and do not find any error in the trial court's decision to deny defendant's motion for mistrial or for severance based thereon.
 {¶ 64} Assignment of Error V is overruled.
 {¶ 65} "VI. Given the easily predicted decision by the trial court (which counsel-opposite had to know was foreordained) to grant outright acquittals to a co-defendant, and given the very substantial risk the jury would surely read into the sudden elimination of the acquitted defendant that the court indeedbelieved the testimony of this witness, it follows the denial of the defendant's motion for a mistrial, or for a severance, cannot survive meaningful scrutiny."
 {¶ 66} Defendant argues that the trial court should have granted his motion for mistrial or severance based on the fact that the trial court ultimately granted one of his co-defendant's motion for acquittal under Crim.R. 29.
 {¶ 67} Pursuant to Crim.R. 8(B), joinder is permitted if two or more defendants are alleged to have participated in the same act or transaction or in the same course of criminal conduct. Relief from such joinder is available under Crim.R. 14 upon a demonstration of prejudice. The decision whether to sever defendants from a joint trial rests within the sound discretion of the trial court. State v. Schiebel (1990), 55 Ohio St.3d 71;Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 68} A trial court does not abuse its discretion in denying a motion for severance of trials when the State presents evidence that is direct, uncomplicated, and the jury demonstrates its ability to segregate the proof on each charge. State v. Brooks
(1989), 44 Ohio St.3d 185, 194. Here, the evidence was uncomplicated and direct. All of the defendants were arrested at 5541 Grasmere. The officers testified concerning the ongoing undercover surveillance that included observations of each of the defendants during a specific period of time. The same evidence would be offered against each of the defendants even if they had been tried separately. Defendant does not dispute this fact. Instead, defendant argues that he was prejudiced by the inference that the jury would draw from the absence of the co-defendant, who the trial court acquitted.
 {¶ 69} First, the acquitted co-defendant had waived his right to trial by jury. Nonetheless, that co-defendant's absence was not explained to the jury and they were not advised of the acquittal. Rather, the trial court instructed the jury as follows:
 {¶ 70} "[I]f you look over to the defense table, you will notice [one of the co-defendants and his counsel] are gone. As you are aware, their case was tried to the Court. And I must instruct you that their absence can no way affect your deliberations on the remaining two defendants. Okay. You cannot draw any inference either way from [their] being absent from this trial. Does everyone clearly understand that? Okay. Good." (Tr. 1705). It was just as likely for the jury to conclude that the court found the co-defendant guilty as it would have been for them to conclude the opposite.
 {¶ 71} As set forth previously, we are to presume that the jury followed the instructions given to it by the trial judge.Stallings, supra. This presumption is buttressed by the fact that the jury found defendant guilty but acquitted the remaining codefendant. Accordingly, we find that the jury clearly demonstrated its ability to segregate evidence as to the individual charges against each of the defendants and properly separated the evidence as to the co-defendants. Accordingly, we do not find that the trial court abused its discretion by denying defendant's motion.
 {¶ 72} Assignment of Error VI is overruled.
 {¶ 73} "IX. The verdicts convicting the defendant of all the charges were not based on evidence sufficient to support findings of guilt beyond a reasonable doubt."
 {¶ 74} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 75} Under this assignment of error, defendant argues that his convictions were not supported by sufficient evidence because he claims Mason's testimony was not credible. The relevant standard, however, compels us to view the evidence in a light most favorable to the prosecution. Defendant was charged with drug trafficking, possession of drugs, and possession of criminal tools.
 {¶ 76} Mason testified that defendant stored large amounts of marijuana at 5541 Grasmere and that he assisted defendant in "breaking down" the marijuana in preparation for its sale. The testimony established that police first observed defendant during their surveillance of a suspected drug dealer at a hotel. There was evidence presented that defendant transported people and packages between the hotel and 5541 Grasmere and that an occupant of defendant's vehicle put out trash that contained marijuana residue and drug packaging materials. Records linked to cellular phones used by defendant were produced showing calls to Mason and the other co-defendants. Mason indicated that defendant would call him and ask him to check on the marijuana and that defendant paid him with marijuana.
 {¶ 77} As set forth previously herein, the jury was clearly instructed that they were to decide the credibility of the witnesses and were cautioned to weigh Mason's testimony with grave caution and great care. Ibid. The jurors were free to disregard Mason's testimony in toto. The record contains other evidence of defendant's involvement in the crimes charged beyond Mason's testimony, i.e., the police surveillance of defendant and his vehicle to and from the hotel and 5541 Grasmere, cell phone records, and his presence during the execution of the search warrant on the premises. Defendant's assertion that the State did not produce sufficient evidence to support his convictions is without merit.
 {¶ 78} Assignment of Error IX is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Kilbane, J., concur.
[1] Defendant only objected to one of the comments he claims were improper. Ibid.