{¶ 43} I respectfully dissent from the majority decision affirming the trial court's suppression of the search. Although I concur with the majority decision on the first assignment of error upholding the decision to excise paragraphs thirteen and fourteen of the affidavit, I nevertheless believe the remaining portions of the affidavit contained sufficient probable cause to justify the search. In addition, I do not believe the defendant demonstrated standing to challenge the warrant.
 {¶ 44} The majority relies on State v. Gales, supra, to support the holding in the second assignment of error that there was insufficient probable cause in the remaining affidavit to search the residence. Although I find Gales relevant, I believe the facts in the present case are clearly distinguishable.
 {¶ 45} In Gales, as here, two "buys" took place in predetermined locations away from the residence that was the target of the search. TheGales decision focused on the "staleness" of the information involving the first buy in that affidavit. The first Gales "buy" was identified in the affidavit as having taken place "several months ago," prior to the issuance of the warrant. In the second Gales "buy," the affidavit did not indicate that anyone followed Gales either to, or from, the residence immediately before or after the buy. The only reference linking the second buy in Gales to the residence was the officer's reference in the affidavit to the fact that the officer "[w]ithin the past seventy-two (72) hours * * * observed Gales going in and out of the above described premises." And that the officer "* * * observed this vehicle [the one used in the buy], in the driveway of the above described premises."
 {¶ 46} Here both "buys" took place close in time to the underlying search. The search actually occurred within 24 hours of the second "buy." In addition, the affidavit clearly states, and Rivera did not dispute, that immediately after the first "buy" officers followed Rivera back to the residence at 1338 West 65th Street.[1] Further, both prior to and after the second "buy," surveillance officers watched Rivera leave and return to the targeted residence. The relevant non-excised portions of the affidavit state:
"4. Affiant avers that detectives then followed the male known asJunior[2] to the above premises and watched as he entered."
 "8. Affiant avers that after the call was made, detectives were placedoutside the above address and observed a Hispanic male matching thedescription of Junior or Ramon, exit the above premises and travel to thepre-arranged location in a 1987 Toyota Camry, maroon in color, to thepre-arranged meeting place. This is the same vehicle that Junior travelledin on the previous controlled purchase."
 "10. Detectives then surveilled Junior and followed him to theabove premises, which he entered."
 {¶ 47} Unlike in Gales, there is nothing here to demonstrate the information in the affidavit was stale. Further, although the Gales court stated: "[W]hile the affiant avers that he observed Gales going in and coming out of 15801 Invermere within a 72-hour period, nothing connects this with ongoing criminal activity." Here we have specific criminal activity on two distinct dates directly related to the "buys" traced directly back to this residence.
 {¶ 48} To suggest that no probable cause exists in such instances implies that police may never be able to search a residence unless they have a "buy" directly from that location. Further, such a position also suggests that unless the suspect's "residency" is established at the target location, a search based on an "off site" "buy" might not be authorized. Such positions are inconsistent with the realities of the drug trade. It is common knowledge that many "buys" occur at remote locations and that many dealers use third-party residences to avoid telegraphing to authorities their primary base of operations.
 {¶ 49} The dissent in the original Gales decision pointed out the problems with creating a standard that ignores the conventional realities of circumstantial evidence.
"The majority opinion would also seem to require that magistratespresented with an affidavit in support of a search warrant disregardcircumstantial evidence in determining the existence of probable cause.Under the majority's new standard, if the appellant had merely pulled outof his driveway and driven to the end of the street to sell heroin(rather than driving a few extra blocks) and returned home immediatelythereafter, all the while under police surveillance, there still wouldhave been an insufficient link to the possible presence of heroin at hishome address to justify a search warrant. As observed in State v. Jenks(1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492, `circumstantial evidenceand direct evidence inherently possess the same probative value.'"
 {¶ 50} Further, in support of the motion to suppress, Rivera's counsel argued, "There's no evidence that Ramon Rivera lives there. There is no connection to him to any particular apartment there."
 {¶ 51} I question, given this assertion, whether Rivera ever had standing to challenge this search. As this court recently stated: "Where a defendant denies any interest in a residence and/or the evidence seized therefrom, he does not have standing to challenge the search of the residence." State v. Hines, Cuyahoga App. No. 83485, 2004-Ohio-5206
Ohio.
 {¶ 52} Here, the central issue is whether, given all the circumstances, there was a fair probability that contraband would be found at the location designated to be searched.
"When determining the sufficiency of probable cause in an affidavitsubmitted in support of a search warrant, `the task of the issuingmagistrate is simply to make a practical, common-sense decision whether,given all the circumstances set forth in the affidavit before him,including the veracity and basis of knowledge of persons supplyinghearsay information, there is a fair probability that contraband orevidence of a crime will be found in a particular place.' State v.George (1989), 45 Ohio St. 3d 325; 544 N.E.2d 640, paragraph one of thesyllabus, following Illinois v. Gates (1983), 462 U.S. 213, 238-239,103 S. Ct. 2317, 76 L. Ed. 2d 527."
 {¶ 53} I am cognizant that this was, at best, a warrant drafted with multiple errors as outlined by the majority in the first assignment of error. Nevertheless, I would find there is a sufficient nexus between the residence in question and the probable cause outlined in the remaining affidavit to support the search of the residence. On that basis, I would reverse the decision of the trial court granting the motion to suppress and remand the case for further proceedings.
[1] This residence was specifically identified as a two-family residential dwelling. The warrant was specific in describing the area to be searched as "1338 West 65th, up, rear * * * the upper level of a two-family residential dwelling.
[2] "Junior" was later identified as the defendant Ramon Rivera.